# EXHIBIT 2

# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

- - - - - - - - - - - - - - - - - - - -

JACK BOOTHE, Individually and on Behalf of       :
All Others Similarly Situated,                   :
                                                 :
        Plaintiff,                            :
                                                 :
v.                                               :
                                                 :
NORTHSTAR REALTY FINANCE CORP., et.    :    Case No. 16-cv-03742-JFM
al.                                              :
                                                 :
        Defendants.                           :
                                                 :

- - - - - - - - - - - - - - - - - - - -

## STIPULATION OF SETTLEMENT

       This Stipulation of Settlement ("Stipulation" or "Agreement") is entered into as of June 30, 2017, by and among plaintiff Jack Boothe (the "NRF Plaintiff"), a shareholder of nominal and direct defendant NorthStar Realty Finance Corp. ("NRF" or the "Company"), NRF, David T. Hamamoto, Judith A. Hannaway, Wesley D. Minami, Louis J. Paglia, Gregory Rush, and Charles W. Schoenherr, through their respective undersigned counsel, with respect to the above-captioned consolidated action (the "NRF Action"), *Jack Boothe* v. *NorthStar Realty Finance Corp., et al.*, Case No. 16-cv-03742, pending in the United States District Court for the District of Maryland (the "Court").[1]

       Defendants David T. Hamamoto, Judith A. Hannaway, Wesley D. Minami, Louis J. Paglia, Gregory Rush, and Charles W. Schoenherr are referred to herein as the "Individual Defendants." The Individual Defendants and NRF are collectively referred to as "Defendants." The NRF Plaintiff and Defendants are collectively referred to as the "Settling Parties."

---

[1] Capitalized terms not defined herein shall have the meanings given to them in the Memorandum of Understanding ("MOU") signed on December 9, 2016.

## **RECITALS**

WHEREAS:

A.    On June 2, 2016, NSAM, Colony Capital, Inc. ("Colony Capital"), NorthStar Realty Corp. ("NRF"), and certain other parties, entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which (among other things) NSAM, Colony Capital, and NRF, agreed to combine in an all-stock merger of equals (the "Colony NorthStar Transaction," or "Transaction") that would result in the creation of a combined company, Colony NorthStar, Inc. ("Colony NorthStar").   As part of the Colony NorthStar Transaction, the class A and class B common stockholders of Colony Capital received 1.4663 shares of Colony NorthStar class A or class B common stock, respectively.   Common stockholders of NRF received 1.0996 shares of Colony NorthStar class A common stock for each share of NRF common stock they owned.   Common stockholders of NSAM received 1.000 shares of Colony NorthStar class A common stock for each share of NSAM common stock they owned.   Holders of each series of preferred stock of Colony Capital or NRF received one share of a series of preferred stock of Colony NorthStar with substantially the same terms for each share of Colony Capital or NRF preferred stock they own.

B.    On July 28, 2016, Colony NorthStar, a Maryland subsidiary of NSAM, filed a registration statement on Form S-4 with the Securities and Exchange Commission ("SEC") that included a joint proxy statement/prospectus of NSAM, Colony Capital, and NRF which, among other things, (i) summarized the Merger Agreement, (ii) provided an account of the events leading up to the execution of the Merger Agreement, (iii) stated that the NSAM, Colony Capital, and NRF boards of directors each determined that the Colony NorthStar Transaction was in the best interests of their respective stockholders and recommended the Colony NorthStar Transaction for approval by their respective stockholders, and (iv) summarized the valuation analyses and fairness opinions

by Bank of America Merrill Lynch ("Bank of America"), the financial advisor to Colony Capital's board of directors, Goldman, Sachs & Co., ("Goldman"), the financial advisor to NSAM's board of directors, Evercore Group L.L.C. ("Evercore"), the financial advisor to NSAM's special committee of independent directors, and UBS Securities LLC ("UBS"), the financial advisor to NRF's special committee of independent directors, which preliminary joint proxy statement/prospectus was amended and supplemented on September 15, 2016, October 17, 2016, and November 14, 2016 (as so amended and supplemented, the "Proxy Statements").

C.       On September 29, 2016, William Carter filed a putative class action entitled *William Carter v. Colony Capital, Inc., et al., Case No. 16-cv-03282* (the "Colony Capital Action") in the United States District Court for the District of Maryland on behalf of himself and the other public shareholders of Colony Capital, alleging, among other things, that Colony Capital, Thomas J. Barrack, Jr., Richard B. Saltzman, Nancy A. Curtin, George G.C. Parker, John A. Somers, and John L. Steffens, (collectively, the "Individual Colony Capital Defendants" and together with Colony Capital, the "Colony Capital Defendants") violated Section 14(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder by soliciting stockholder votes with the Proxy Statements that the Colony Plaintiff alleged were false and/or misleading, and that the Colony Capital Defendants were liable under Section 20(a) of the Exchange Act, and sought, among other things, an order enjoining the Colony NorthStar Transaction unless or until the alleged material deficiencies in the Proxy Statements were corrected.

D.       On November 18, 2016, Cindy Kessler, (the "NSAM Plaintiff"), on behalf of herself and the other public shareholders of NSAM, filed a putative class action entitled *Cindy Kessler v. NorthStar Asset Management Group, Inc., et al., Case No. 16-cv-03745* (the "NSAM

**EXECUTION COPY**

Action"), against NSAM, David T. Hamamoto, Judith A. Hannaway, Albert Tylis, Stephen Cummings, Oscar Junquera, Justin Metz, Wesley Minami, and Louis J. Paglia (the "Individual NSAM Defendants," and together with NSAM, the "NSAM Defendants"), alleging that the NSAM Defendants committed disclosure violations under Section 14(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder, and that the Individual NSAM Defendants committed disclosure violations under Section 20(a) of the Exchange Act, and seeking, among other things, an order enjoining the Colony NorthStar Transaction;

E.      On November 18, 2016, Jack Boothe (the "NRF Plaintiff"), on behalf of himself and the other public shareholders of NRF, filed the NRF Action (together with the NSAM Action and the Colony Capital Action, the "Actions"), against NRF, David T. Hamamoto, Judith A. Hannaway, Wesley D. Minami, Louis J. Paglia, Gregory Rush, and Charles W. Schoenherr (the "Individual NRF Defendants," and together with NRF, the "NRF Defendants"), alleging that the NRF Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by soliciting stockholder votes with the Proxy Statements that the NRF Plaintiff alleged were false and/or misleading, and that the Individual NRF Defendants were liable under Section 20(a) of the Exchange Act, and sought, among other things, an order enjoining the Colony NorthStar Transaction unless or until the alleged material deficiencies in the Proxy Statements were corrected.

F.      On November 15, 2016, counsel for the Colony Capital Plaintiff proffered a written demand to counsel for Defendants seeking the dissemination of certain additional information regarding the Colony NorthStar Transaction, which demand thereafter was joined by the NRF Plaintiff and the NSAM Plaintiff (together with the Colony Capital Plaintiff, the

"Plaintiffs") and subsequently, counsel to Plaintiffs and counsel to the Defendants engaged in negotiations concerning the terms to settle the Actions.

G.      On November 29, 2016, the Colony Capital Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion"), which asked the Court to enjoin the Colony NorthStar Transaction unless or until the alleged material deficiencies in the Proxy Statements were corrected.

H.      The Court scheduled a hearing on the Motion for December 1, 2016 at 4:00 p.m. (the "December 1 Hearing").

I.      Thereafter the parties engaged in extensive, arm's-length negotiations regarding potential terms to settle the Actions.  On December 9, 2016, counsel to the parties in the Actions reached an agreement on the supplemental disclosures (the "Supplemental Disclosures") that the counsel for the Colony Capital Plaintiff demanded and was joined in the request by NRF Plaintiff's counsel and NSAM Plaintiff's counsel.  NRF agreed to disseminate the Supplemental Disclosures to NRF shareholders on December 9, 2016.  The Supplemental Disclosures formed the basis for a tentative settlement of the Actions, as reflected in a Memorandum of Understanding dated December 9, 2016 ("MOU").  Defendants acknowledge that the Supplemental Disclosures were filed with the SEC and issued to shareholders as a direct result of the prosecution of class claims in the Actions.

J.      On December 9, 2016, NRF disseminated the Supplemental Disclosures to NRF shareholders pursuant to the MOU, a copy of which is attached hereto as Exhibit A.

K.      On December 20, 2016, at a special meeting of the shareholders of NRF, the holders of the majority of the outstanding shares of NRF voted to approve the Colony NorthStar Transaction.

L.    On January 10, 2017, NRF filed Articles of Merger with the Department of Assessments and Taxation of the State of Maryland, pursuant to which NRF was merged into Colony NorthStar, a Maryland corporation.

M.    Pursuant to the terms of the MOU, counsel for Plaintiffs have conducted an investigation to confirm the potential settlement terms are fair and reasonable to stockholders, that included, among other things, a review of publicly available documents related to the Transaction, non-public documents produced to Plaintiffs by Defendants, and the depositions of Colony Capital Director John Somers, Cavan Yang, a representative of Bank of America, NSAM Director and special committee member Charles Schoenherr, Alan Felder, a representative of UBS, NRF Director and special committee member Justin Metz, and Keith Wetzel, a representative of Goldman.

N.    In connection with settlement discussions and negotiations leading to the execution of this Stipulation, counsel for the parties to the NRF Action did not discuss the appropriateness or amount of any application by NRF Plaintiff's counsel for an award of attorneys' fees and expenses.

O.    Defendants, the Colony Capital Defendants, and the NSAM Defendants each has denied, and continues to deny, that he, she or it committed any breach of fiduciary duty, or any other law, including the federal securities laws, or engaged in any of the wrongful acts alleged in the Actions, and expressly maintains that he, she or it diligently and scrupulously complied with his, her or its fiduciary and other legal duties, to the extent such duties exist, and is entering into this Stipulation solely to eliminate the burden, expense and uncertainties inherent in further litigation.

**EXECUTION COPY**

P.        Counsel for Plaintiffs believe that the Plaintiffs' claims have merit based on proceedings to date, but recognizes that Defendants would continue to assert legal and factual defenses to Plaintiffs' claims and that entry into this Stipulation is not an admission as to the lack of any merit of any of the claims asserted in the NRF Action, and further recognizes that Plaintiffs believe that the Supplemental Disclosures permitted the Company's shareholders to make a fully informed decision with respect to the Transaction and eliminated any need for expedited or injunctive relief as sought in the NRF Action. Plaintiffs' counsel has concluded that the proposed settlement set forth in this Stipulation (the "Settlement") is fair and adequate, and that it is reasonable to pursue the Settlement based upon the terms and procedures outlined herein.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among the undersigned parties, that the NRF Action shall be settled, subject to the approval of the Court, pursuant to Rules 23, 23.1, and 41 of the Federal Rules of Civil Procedure, upon and subject to the following terms and conditions:

**AGREEMENT**

1.        **Order Giving Notice To Settlement Class And Preliminarily Approving Settlement**. As soon hereafter as may be possible in consideration of the Court's schedule, counsel for the undersigned parties shall apply jointly to the Court for immediate entry of an order substantially similar in substance to the form of proposed Order Preliminarily Approving Settlement attached hereto as Exhibit B (the "Preliminary Approval Order"). The Preliminary Approval Order shall, among other things, specifically include provisions that:

(a)        for purposes of the proposed Settlement only, preliminarily find and determine that the NRF Action may proceed as a non-opt out class action pursuant to Federal Rule of Civil Procedure 23, defined as any and all record and beneficial holders of NRF common shares,

their respective successors in interest, successors, predecessors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors and successors and assigns, who held NRF common shares at any time between and including May 6, 2016 and January 17, 2017 (the "Class" or "Settlement Class," composed of the "Class Members"), and further find and determine that NRF Plaintiff and the law firms of co-lead plaintiff's counsel Brower Piven, P.C. and Faruqi & Faruqi LLP ("Class Counsel") will fairly and adequately represent the interests of the Settlement Class in enforcing their rights in the Action;

(b)      preliminarily approve the Settlement as fair, reasonable, adequate and in the best interests of the Settlement Class and NRF in its capacity as nominal defendant;

(c)      schedule a hearing or hearings to be held before the Court (the "Final Settlement Hearing") in order to determine (i) whether the Settlement Class should be finally certified, (ii) whether the Settlement set forth in this Stipulation should be finally approved as fair, reasonable, adequate, and in the best interests of the Settlement Class, (iii) whether a final judgment should be entered dismissing the claims of the NRF Plaintiff and Class Members with prejudice, as required by this Stipulation and releasing claims as required by this Stipulation, (iv) whether and, if so, in what amount to award attorneys' fees and reimbursement of expenses to NRF Plaintiff's counsel pursuant to the fee application to be filed as referenced herein (if any), and (v) rule on any objections to the Settlement and/or the fee application;

(d)      direct that notice be given to the Settlement Class of the pendency of the NRF Action, the existence of the Settlement and a summary of its terms, the preliminary certification of the Settlement Class for settlement purposes, the appointment of the NRF Plaintiff

and Class Counsel to represent the Settlement Class, the preliminary approval of the Settlement, the Final Settlement Hearing, and the right of each Class Member to object to or otherwise be heard on the subject of the Settlement in the manner specified in paragraph 1(e) below;

   (e) approve the form of Notice of Proposed Settlement of Class Action and Hearing (the "Notice") attached hereto as Exhibit C, for mailing to Class Members in order to provide notice of the Final Settlement Hearing, and direct that NRF mail or cause to be mailed the Notice to Class Members who are reasonably identifiable, at their last known addresses set forth in the stock transfer records maintained by or on behalf of NRF, by first class United States mail, postage prepaid, such mailing to occur at least sixty (60) calendar days before the date of the Final Settlement Hearing;

   (f) find that notice pursuant to paragraph 1(e) above constitutes the best notice practicable under the circumstances, constitutes due and sufficient notice of the Settlement and the matters set forth in said notices to all persons entitled to receive notice, and fully satisfies the requirements of due process and of Federal Rules of Civil Procedure 23 and 23.1;

   (g) provide that any objections by Class Members to the Settlement reflected in this Stipulation, including any award of attorneys' fees and expenses, shall be heard at the Final Settlement Hearing, and any papers submitted in support of said objections shall be received and considered by the Court in connection with the Final Settlement Hearing (unless, in its discretion, the Court shall direct otherwise), only if persons making objections file with the Court, and serve upon Class Counsel and counsel for Defendants, on or before the date set by the Court (such date to be at least twenty-one (21) calendar days before the Final Settlement Hearing), written notice of their intent to appear at the Final Settlement Hearing and copies of all materials they ask the Court to consider in connection with issues to be addressed at the Final Settlement Hearing;

(h)    provide that notices and papers pursuant to paragraph 1(g) above shall be deemed filed on the date they are hand delivered or received by the Court via first class, postage prepaid, U.S. mail to:

> Clerk of Court
> U.S. District Court for the District of Maryland, Northern Division
> 101 West Lombard Street
> Baltimore, MD 21201

and shall be deemed served on Class Counsel on the date they are hand delivered or mailed, first class, postage prepaid, to Class Counsel and Defendants' respective counsel as specified in the Preliminary Approval Order;

(i)    provide that, from the date of the Preliminary Approval Order until the Court determines whether a final judgment should be entered in accordance with paragraph 3 below, the NRF Plaintiff and all Class Members, and any of them, are barred and enjoined from commencing, prosecuting, instigating or in any way participating in the commencement, prosecution or instigation of any action asserting any Released Claims, either directly, representatively, derivatively, or in any other capacity, against any Released Party (as herein defined); and

(j)    provide that the Final Settlement Hearing may, from time to time and without further notice to Class Members, be continued or adjourned by order of the Court without further notice of any kind other than announcement at the Final Settlement Hearing or at any later hearing.

2.    **CAFA Notice**.  Defendants shall no later than ten (10) calendar days following the filing of this Stipulation with the Court, serve upon the appropriate State official of each State in which a Member of the Settlement Class resides and the Attorney General of the United States a notice of the proposed settlement (the "CAFA Notice") in compliance with the requirements of

the Class Action Fairness Act, 28 U.S.C. § 1715 et seq. ("CAFA"). Defendants are solely responsible for the costs of the CAFA Notice and administering the CAFA Notice. Prior to the Final Approval Hearing, Defendants shall cause to be served on Class Counsel and filed with the Court proof, by affidavit or declaration, regarding compliance with CAFA § 1715(b).

       3.    **Order And Final Judgment**. At the Final Settlement Hearing set by the Court, the Settling Parties shall ask the Court immediately to enter an Order and Final Judgment identical in substance to the form attached hereto as Exhibit D (the "Order and Final Judgment"). The Order and Final Judgment shall specifically include provisions that:

       (a)    approve the Settlement set forth in this Stipulation as fair, reasonable, adequate, and in the best interests of the Settlement Class and the Company in its capacity as nominal defendant, and direct consummation of the Settlement in accordance with the terms and provisions of this Stipulation;

       (b)    dismiss with prejudice all claims in the NRF Action, including dismissal with prejudice of the derivative claims pursuant to Federal Rule of Civil Procedure 23.1, without the award of any damages, costs, fees, or the grant of any further relief, except for such award of fees and expenses that the Court may make pursuant to this Stipulation;

       (c)    adjudge that the NRF Plaintiff, all Class Members, Defendants and NRF shall conclusively be deemed bound by the Release contained in paragraph 11 below, and permanently barring, among other things, claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature, or description whatsoever, whether direct, derivative, individual, class, representative, legal, equitable, or of any other type (known or unknown), whether based on

state, local, foreign, federal, statutory, regulatory, common, or other law or rule, that the NRF

Plaintiff or any or all members of the Class, in his, her, or their capacity as a NRF shareholder

("Releasing Parties") ever had, now have, or may have, or otherwise could, can, or might assert,

against the Defendants, the Colony Capital Defendants, the NSAM Defendants, Colony NorthStar,

Bank of America, Evercore, Goldman, UBS or any of their respective families, parent entities,

controlling persons, associates, predecessors, successors, affiliates, or subsidiaries, and each and

all of their respective past or present officers, directors, executives, stockholders, principals,

representatives, employees, attorneys, financial or investment advisors, consultants, accountants,

auditors, investment bankers, commercial bankers, entities providing fairness opinions,

underwriters, brokers, dealers, insurers, advisors or agents, heirs, executors, trustees, general or

limited partners or partnerships, limited liability companies, members, managers, joint ventures,

personal or legal representatives, estates, administrators, predecessors, successors, and assigns,

and each of their respective affiliates, controlling persons, directors, officers, employees and

agents, (the "Released Parties") that relate to or challenge: (i) the Colony NorthStar Transaction,

(ii) any actions, deliberations or negotiations in connection with the Colony NorthStar Transaction

or any agreements, disclosures, or events related thereto, (iii) the consideration received by the

Class members or any Released Parties in connection with the Colony NorthStar Transaction, (iv)

the fiduciary or other obligations of the Released Parties in connection with the Colony NorthStar

Transaction, (v) the fees, expenses or costs incurred in prosecuting, defending or settling the NRF

Action, the Colony Capital Action, or the NSAM Action, (vi) any of the allegations in any

complaint or amendment(s) thereto filed in the NRF Action, the Colony Capital Action, or the

NSAM Action, (vii) the NRF Action, the Colony Capital Action, or the NSAM Action, (viii) the

Merger Agreement or any preliminary or definitive joint proxy statement or other disclosures filed

or distributed to unitholders or stockholders in connection with the Colony NorthStar Transaction (including without limitation the Proxy Statements and the Supplemental Disclosures, and any other materials related to the Colony NorthStar Transaction that has been or will be filed with the SEC), including without limitation any disclosures, non-disclosures or public statements made in connection with any of the foregoing, and (ix) any and all conduct by any of the Defendants or any of the other Released Parties arising out of or relating in any way to the negotiation or execution of this Settlement, the MOU, or the Related MOUs ("Released Claims");

        (d)    adjudge that Defendants, including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under any of them, and each of them, forever release NRF Plaintiff, NRF Plaintiff's counsel, and the members of the Class from any and all claims arising out of or relating to their filing and prosecution of the NRF Action and any Released Claims; provided, however, that this release shall not include the right of Defendants to enforce the terms of the Settlement;

        (e)    adjudge that the notice previously given to Class Members pursuant to paragraphs 1(d) and 1(e) above constituted the best notice practicable under the circumstances, constituted due and sufficient notice of the NRF Action, the Settlement, and the matters set forth in said notices to all persons entitled to receive notice, and fully satisfied the requirements of due process and Federal Rules of Civil Procedure 23 and 23.1;

        (f)    adjudge that Defendants have complied in all respects with CAFA; and

        (g)    retain jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this Stipulation and the Settlement.

4.    **Effect Of Court Disapproval**.  The Settlement shall not be legally binding upon any party unless and until this Stipulation is executed.  The Settlement shall be subject to the approval of the Court and any appeals that may be taken with respect to such approval.  Should this Stipulation not be executed or not be consummated in accordance with the terms described herein, the Settlement shall be null and void and of no force and effect, and shall not be deemed to prejudice in any way the position of any party with respect to the litigation.  In such event, and consistent with the applicable evidentiary rules, neither the existence of this Stipulation and the MOU nor their contents shall be admissible in evidence or shall be referred to for any purpose in the NRF Action or in any other proceeding.  Further, in such event, (1) the Parties shall be restored to their respective positions as they initially existed, and this Stipulation and all negotiations, transactions, and proceedings in connection herewith shall not be deemed to prejudice in any way their respective positions, and (2) the conditional certification of the Settlement Class as provided for herein shall be vacated and of no further force and effect with respect to Defendants, and Defendants shall not be precluded from challenging whether the case may proceed as a class action.

5.    **Effect Of Certain Future Events On Stipulation.**

(a)    If any action that would be barred by the releases contemplated by this Stipulation is commenced, prosecuted, continued, or instigated, either directly, representatively, derivatively, or in any other capacity, against any of the Released Parties in any court prior to the Effective Date (as defined in paragraph 6 below), and if a motion to dismiss such action has not yet been granted, or a motion to stay such action has not yet been granted in contemplation of dismissal after the Effective Date, then all or any of the Defendants, at his, her, its, or their sole option, prior to the Effective Date, may withdraw from this Stipulation; *provided, however*, that such Defendant has first given five (5) business days' written notice to each of the counsel listed

below so as to be received by such counsel the following day after notice is given. Within that five (5) business day period, counsel may attempt to cause dismissal of the action asserting any of the Released Claims. If counsel succeeds in obtaining dismissal of the action asserting the Released Claims within the five (5) business day period, then any termination or cancellation by such Defendant shall be deemed a nullity. In order to constitute dismissal for purposes of this paragraph, an appropriate notice of dismissal, or motion to stay such action in contemplation of dismissal after the Effective Date, must have been filed with the proper court, and dismissal with prejudice, or an order granting a motion to stay such action in contemplation of dismissal after the Effective Date, must have been entered. This Stipulation shall remain binding as to any Defendant not so withdrawing.

(b)      If a Defendant elects to withdraw from this Stipulation pursuant to this paragraph 5, then (i) such Defendant and the NRF Plaintiff shall be restored to their respective positions as to each other as they existed prior to execution of the MOU, and neither the MOU, this Stipulation nor any negotiations, transactions, and proceedings in connection herewith shall be deemed to prejudice in any way their respective positions as to each other, and as to each other the NRF Action shall be deemed to revert to its status as of the date and time immediately prior to the execution of the MOU; (ii) neither the MOU, the provisions contained in this Stipulation nor any negotiations, discussions and proceedings in connection with this Stipulation shall be deemed a presumption, concession or admission by any Settling Party of any fault, liability or wrongdoing or lack of any fault, liability or wrongdoing, as to any facts or claims alleged or asserted in the NRF Action, or any other actions or proceedings, nor shall any of them be interpreted, construed, deemed, invoked, offered or received in evidence or otherwise used as to such Defendant by any person in the NRF Action, or in any other action or proceeding, whether civil, criminal or

administrative; (iii) such Defendant shall not be obligated to pay any of the fees or expenses as provided for herein (other than, if already incurred, the notice costs addressed in paragraph 2 above and paragraph 9 below); and (iv) the conditional certification of the Settlement Class as provided for herein shall be vacated and of no further force and effect with respect to such Defendant, and such Defendant shall not be precluded from opposing certification of any class in future proceedings.  If any Defendant withdraws from the Settlement or otherwise exercises rights set forth in paragraph 5(a) above or in this paragraph 5(b), Class Counsel reserves the right to apply for an award of attorneys' fees, costs and expenses, and Defendants reserve the right to oppose such an application for attorneys' fees, costs and expenses.

6.    **Effective Date Of Settlement**.  The Settlement contemplated by this Stipulation shall be deemed effective, and the Settling Parties shall be definitively bound thereto, on the date on which the judgment entered pursuant to the Order and Final Judgment shall be deemed "Final" (the "Effective Date"). The judgment entered pursuant to the Order and Final Judgment shall be deemed "Final" on the date upon which the judgment is no longer subject to any further appeal or judicial reconsideration or review, whether by affirmance on or exhaustion of any possible appeal or review, writ of certiorari, lapse of time, or otherwise.  Thus, "Final" means, without limitation, the date of expiration of the time for the filing or noticing of any appeal from, or other request for judicial reconsideration or review of, the judgment entered pursuant to the Order and Final Judgment, without any appeal or other request for judicial reconsideration or review having been filed or noticed; or, if an appeal or other request for further judicial review of the judgment entered pursuant to the Order and Final Judgment is timely filed or noticed, the date on which all appellate and/or other judicial proceedings resulting from such filing(s) or notice(s) have been finally terminated, and the judgment entered pursuant to the Order and Final Judgment identical in

substance to the form attached hereto as Exhibit D is effective without the possibility of further review by any court; *provided, however*, and notwithstanding any provision to the contrary in this Stipulation, the pendency of any appeal or judicial reconsideration or review related to the approval of any attorneys' fees and expenses, as addressed in paragraph 10, shall not be considered in determining the Effective Date.

7.    **Provision Of Supplemental Disclosures; Contributions Of NRF Action.**    In consideration for this Stipulation, the settlement and dismissal with prejudice of the NRF Action, and the releases contemplated by this Stipulation, the Defendants agreed to and NRF did make the Supplemental Disclosures filed with the SEC on December 9, 2016 in a Form 8-K. A copy of the Form 8-K is attached hereto as Exhibit A.  The Plaintiffs and their counsel believe, based on the information available to them, that the Proxy Statements, with the addition of the Supplemental Disclosures, are adequate so that NRF shareholders were able to make an informed and meaningful decision regarding whether to vote for or against the Merger.  Without admitting any wrongdoing, Defendants acknowledge that the prosecution of the NRF Action and discussions with counsel for the NRF Plaintiff were a cause of the decision to make the Supplemental Disclosures. Furthermore, without admitting any wrongdoing, Defendants acknowledge that the Proxy Statements mooted the disclosure claims alleged in the Complaint.

8.    **Evaluation Of Settlement Terms By Counsel For The NRF Plaintiff**. The NRF Plaintiff's counsel has concluded that the proposed Settlement is fair and adequate, and that it is reasonable to pursue the Settlement based upon the terms and procedures outlined herein.

9.    **Payment Of Costs And Administration Of Notice**.  NRF and/or its successor(s) in interest shall pay the costs and expenses related to providing notice of the Settlement to the Class, as well as any costs and expenses related to the administration of the Settlement.

10.     **Payment Of Attorneys' Fees And Reimbursement Of Expenses.**

(a)     Class Counsel reserves the right to seek an award of attorneys' fees and expenses. Defendants reserve the right to oppose the amount of any such request, but acknowledge that Class Counsel is entitled to seek an award of attorneys' fees and expenses in connection with the Settlement, subject to the Court's approval.  Class Counsel agrees not to seek an award of fees in any other court in connection with the NRF Action and the Settlement.  In the event the parties are unable to reach an agreement on attorneys' fees and expenses prior to the execution of a Stipulation, the parties agree to submit this Stipulation for final approval, notwithstanding approval of Class Counsel's application for attorneys' fees and expenses.  In any event, any fees and expenses awarded by the Court in connection with the Settlement shall be payable within ten (10) calendar days of the entry of the Order and Final Judgment or, if addressed separately by the Court entry of an order awarding such fees and expenses, but in any event such fee and expense award shall be subject to the refund provisions in Section 10(c) below, *provided, however*, that no fees or expenses shall be paid to Class Counsel in the absence of approval by the Court of the Settlement and a complete release of all the Released Persons in the form customarily approved in connection with the Settlement.  Class Counsel shall be jointly and severally responsible for the repayment of any such fees as may be reduced or rescinded upon a successful appeal or collateral attack.  Class Counsel warrants that no portion of any such fees, costs and expenses shall be paid to the NRF Plaintiff or to any member of the Settlement Class, except as approved by the Court.

(b)     Final resolution by the Court of the amount of fees and expenses to be paid to Class Counsel shall not be a condition to the Settlement or entry of the Order and Final Judgment. Any failure by the Court to approve any amount of fees or any request for attorneys'

fees, costs and expenses in whole or in part shall not affect the validity or effectiveness of the Settlement.

(c)     NRF and/or its insurers, on behalf of itself and for the benefit of the other Defendants, shall pay or cause to be paid the Court-ordered amount of fees, costs and expenses in the manner directed by the Court to Class Counsel within ten (10) calendar days of entry of an order by the Court awarding Class Counsel such fees, costs or expenses, *provided* that Class Counsel has delivered to Defendants' counsel in timely fashion a W-9 for Class Counsel and instructions for delivery by mail and wire transfer; *further provided*, *however*, that Class Counsel shall have a joint and several obligation to refund to NRF and/or its insurers, as the case may be, within ten (10) calendar days, all amounts received, if and when, as a result of any appeal and/or further proceeding on remand, or successful collateral attack, the fee or expense award is reduced or reversed, the Settlement is voided by any party as provided in this Stipulation, or the Settlement is reversed or vacated by any court.  Class Counsel shall determine the allocation and distribution among Class Counsel of any attorneys' fees, costs or expenses approved by the Court.  The Released Parties shall have no responsibility for, and no liability with respect to, the fee and/or expense allocation among any of the Class Counsel and/or any other person who may assert any claim thereto.

(d)     Class Counsel shall not seek, and the Defendants shall not bear, any expenses, costs, damages, or fees alleged or incurred by the named NRF Plaintiff, by any member of the Settlement Class, or by any of their attorneys, experts, advisors, agents, or representatives other than as provided for in this paragraph 10.

(e)     Notwithstanding anything else contained in this Stipulation, no fees or expenses that may otherwise be payable pursuant to this Stipulation or the Settlement shall be

payable or paid to the NRF Plaintiff or Class Counsel prior to, or in the absence of an order awarding or approving such fees or expenses by the Court.

      (f)     The entry of the Order and Final Judgment approving the Settlement in the NRF Action shall not divest the Court of jurisdiction over the amount of fees and expenses to be paid to Class Counsel.

      11.    **Release.**

      (a)     As of the Effective Date, the Releasing Parties are deemed to have forever released, relieved, settled, and discharged, fully and completely, among other things, claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature, or description whatsoever, whether direct, derivative, individual, class, representative, legal, equitable, or of any other type (known or unknown), whether based on state, local, foreign, federal, statutory, regulatory, common, or other law or rule, that any or all plaintiffs or any or all members of the Class, in his, her, or their capacity as a NRF shareholder ("Releasing Parties") ever had, now have, or may have, or otherwise could, can, or might assert, against the Defendants, the Colony Capital Defendants, the NSAM Defendants, Colony NorthStar, Bank of America, Evercore, Goldman, UBS or any of their respective families, parent entities, controlling persons, associates, predecessors, successors, affiliates, or subsidiaries, and each and all of their respective past or present officers, directors, executives, stockholders, principals, representatives, employees, attorneys, financial or investment advisors, consultants, accountants, auditors, investment bankers, commercial bankers, entities providing fairness opinions, underwriters, brokers, dealers, insurers, advisors or agents, heirs, executors, trustees, general or limited partners or partnerships, limited

liability companies, members, managers, joint ventures, personal or legal representatives, estates, administrators, predecessors, successors, and assigns, and each of their respective affiliates, controlling persons, directors, officers, employees and agents, (the "Released Parties") that relate to or challenge: (i) the Colony NorthStar Transaction, (ii) any actions, deliberations or negotiations in connection with the Colony NorthStar Transaction or any agreements, disclosures, or events related thereto, (iii) the consideration received by the Class members or any Released Parties in connection with the Colony NorthStar Transaction, (iv) the fiduciary or other obligations of the Released Parties in connection with the Colony NorthStar Transaction, (v) the fees, expenses or costs incurred in prosecuting, defending or settling the NRF Action, the Colony Capital Action, or the NSAM Action, (vi) any of the allegations in any complaint or amendment(s) thereto filed in the NRF Action, the Colony Capital Action, or the NSAM Action, (vii) the NRF Action, the Colony Capital Action, or the NSAM Action, (viii) the Merger Agreement or any preliminary or definitive joint proxy statement or other disclosures filed or distributed to unitholders or stockholders in connection with the Colony NorthStar Transaction (including without limitation the Proxy Statements and the Supplemental Disclosures, and any other materials related to the Colony NorthStar Transaction that has been or will be filed with the SEC), including without limitation any disclosures, non-disclosures or public statements made in connection with any of the foregoing, and (ix) any and all conduct by any of the Defendants or any of the other Released Parties arising out of or relating in any way to the negotiation or execution of this Settlement, the MOU, or the Related MOUs; *provided, however*, that the Released Claims shall not include claims by the parties to enforce the terms of this Stipulation, the Settlement, or the MOU.

(b)     The Settlement is intended to extinguish all of the Released Claims and, consistent with such intention, the Releasing Parties shall waive and relinquish, to the fullest extent

permitted by law, the provisions, rights, and benefits of any state, federal or foreign law or principle of common law, which may have the effect of limiting the release of Released Claims as set forth above.  This shall include a waiver by the Releasing Parties of any rights pursuant to Section 1542 of the California Civil Code (or any similar, comparable, or equivalent provision of any federal, state, or foreign law, or principle of common law), which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

the NRF Plaintiff acknowledges, and the members of the Class shall be deemed by operation of the entry of an order and final judgment approving the Settlement to have acknowledged, that the foregoing waiver was separately bargained for, is an integral element of the Settlement, and was relied upon by each and all of the Defendants in entering into the Settlement.

(c)    As of the Effective Date and upon final approval of the Settlement, the Settlement Class covenants not to sue, and each member of the Settlement Class shall be barred from suing, any Defendant or any other Released Person for any Settled Claim.

12.    **Stay Of Proceedings; Challenges To The Settlement Or Merger.**

(a)    All proceedings in the NRF Action, except for Settlement-related proceedings, shall be stayed until the Court rules upon a motion for final approval of the Settlement.

(b)    Pending final approval of the Stipulation and the Settlement, the NRF Plaintiff agrees to stay the NRF Action and the NRF Plaintiff and all other members of the Class will not initiate or continue any proceedings or request for relief relating to the Merger, the Merger

Agreement, the Preliminary Proxy Statement or the Proxy Statements, other than proceedings incident to the Settlement contemplated by this Stipulation.

(c)    From the date of the Preliminary Approval Order until the Court determines whether a final judgment should be entered, the NRF Plaintiff and all other Class Members, and any of them, and anyone acting on their behalf, are barred and enjoined from commencing, prosecuting, instigating or in any way participating in the commencement or prosecution of any action asserting any Released Claims, either directly, representatively, derivatively, or in any other capacity, against any Released Party.

(d)    The Settling Parties agree to use their best efforts to prevent, stay, or seek dismissal of, or to oppose entry of any interim or final relief in favor of any member of the Settlement Class in, any other litigation that would be barred by the releases contemplated by this Stipulation, and any other litigation against any of the Settling Parties that challenges the Settlement, the Merger, or any transactions contemplated thereby, or that otherwise involves, directly or indirectly, a Released Claim.

13.    **NRF Plaintiff's Representation**.  The NRF Plaintiff, through his duly authorized counsel, represents that (i) he has agreed to serve as representative of the Settlement Class to be certified herein, (ii) he has consulted with Class Counsel about the NRF Action, this Stipulation and the obligations of a representative of the Settlement Class, and (iii) he approves of and has authorized Class Counsel to enter into this Stipulation.  The NRF Plaintiff further represents that he will not seek any incentive or other fee related to his involvement in the NRF Action. The NRF Plaintiff expressly authorizes Class Counsel to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Stipulation to effectuate its terms, and also expressly authorizes Class Counsel to enter into such modifications or amendments to this

Stipulation on behalf of the NRF Plaintiff and the Settlement Class as Class Counsel may deem appropriate and that do not materially prejudice the NRF Plaintiff's or the other Class Members' rights.

14.    **Entire Agreement; Admissibility**.  This Stipulation and its Exhibits constitute the entire agreement among the Settling Parties with respect to the subject matter hereof, and may not be amended nor any of its provisions waived except by a writing signed by all of the Settling Parties hereto.  All agreements, covenants, representations, and warranties, express or implied, oral or written, of the Settling Parties concerning the subject matter of this Stipulation are contained herein.  All prior and contemporaneous conversations, negotiations, possible and alleged agreements, representations, covenants, and warranties between the Settling Parties are merged herein.  No Settling Party is relying upon any statement or representation not specified in this Stipulation.  This Stipulation shall not be admissible in evidence except to enforce its terms.

15.    **Governing Law; Continuing Jurisdiction**.  This Stipulation and the Settlement contemplated by it shall be governed by, and construed in accordance with, the laws of the State of Maryland, without regard to conflict of laws principles.  The Settling Parties agree that any dispute arising out of or relating in any way to this Stipulation and its exhibits shall not be litigated or otherwise pursued in any forum or venue other than the Court and each Settling Party hereto waives any right to demand a jury trial as to any such action.  The Settling Parties submit themselves to the exclusive jurisdiction of the Court for the enforcement and interpretation of this Stipulation and its exhibits, and all other matters regarding or relating to them.  Without affecting the finality of the Settlement, the Court shall retain jurisdiction for purposes, among other things, of administering the Settlement and resolving any disputes hereunder.

16.    **Headings**.  The headings in this Stipulation are solely for the convenience of the Settling Parties, their counsel, and the Court.  The headings shall not be deemed to be a part of this Stipulation and shall not be considered in construing or interpreting this Stipulation.

17.    **Execution In Counterparts**.  This Stipulation may be executed in any number of actual or telecopied counterparts and by each of the different parties on several counterparts, each of which when so executed and delivered will be an original. The executed signature page(s) from each actual or telecopied counterpart may be joined together and attached and will constitute one and the same instrument. This Stipulation shall become effective upon complete execution.

18.    **Execution By Counsel**.  This Stipulation may be executed by Class Counsel, on their own behalf and on behalf of the NRF Plaintiff and the Settlement Class, and by Defendants' counsel, on behalf of Defendants.  By executing this Stipulation, each undersigned counsel expressly represents and warrants that he or she is authorized and empowered to execute this Stipulation on behalf of his or her stated client(s), that the signature of such counsel is intended to and does legally bind stated client(s) of such counsel, and that each such counsel has read this Stipulation and each exhibit hereto.

19.    **Compliance With Rule 11**.  All Settling Parties and their respective counsel in the NRF Action complied with the provisions of Federal Rule of Civil Procedure 11 with respect thereto.

20.    **Modifications Only In Writing; Authorization Of Class Counsel**.  This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a written instrument signed by all of the signatories hereto or their successors in interest.  The NRF Plaintiff expressly authorizes Class Counsel to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Stipulation to effectuate its terms, and also

expressly authorize Class Counsel to enter into such modifications or amendments to this Stipulation on behalf of the NRF Plaintiff and the Settlement Class as Class Counsel deem appropriate.

21.    **Exhibits Incorporated By Reference**.  Each and every Exhibit to this Stipulation is incorporated herein by reference as though fully set forth herein.

22.    **Waiver Of Breach**.  The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver, by that party or by any other undersigned party, of any other prior or subsequent breach of this Stipulation.  Moreover, any failure by any party to insist upon the strict performance by any other party of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Stipulation to be performed by such other party.

23.    **No Admission**.  Defendants have denied and continue to deny that they have committed any breach of fiduciary duty or any other law, including the federal securities laws, or engaged in any of the wrongful acts alleged in the NRF Action, and expressly maintain that they diligently and scrupulously complied with their fiduciary and other legal duties, to the extent such duties exist. The provisions contained in this Stipulation shall not be deemed a presumption, concession, or admission by any party of any fault, liability, or wrongdoing, or lack of merit as to any facts or claims alleged or asserted in the Actions or in any other action or proceeding, and shall not be interpreted, construed, deemed, invoked, offered, or received into evidence or otherwise used by any person in the Actions or in any other action or proceeding, whether civil, criminal or administrative, except in connection with any proceeding to enforce the terms of the Settlement. Class Counsel believe that the NRF Plaintiff's claims have merit based on proceedings to date, but

recognize that Defendants would continue to assert legal and factual defenses to their claims and that entry into this Stipulation is not an admission as to the lack of any merit of any of the claims asserted in the NRF Action, and that the NRF Plaintiff believes that the Supplemental Disclosures resulting from the Settlement permitted the Company's shareholders to make a fully informed decision with respect to the proposed Transaction and eliminated any need for expedited or injunctive relief as sought in the Complaint and future motions. Accordingly, this Stipulation may not be used by any third party against any party hereto. Pursuant to Rule of Evidence 408, the entering into and carrying out of this Stipulation, the exhibits hereto, and any negotiations or proceedings related thereto, shall not in any event be construed as, or deemed evidence of, an admission or concession by any of the undersigned parties or a waiver of any applicable statute of limitations, and shall not be offered or received into evidence in any action or proceeding against any undersigned party in any court, administrative agency, arbitral forum, or other tribunal for any purpose whatsoever, other than to enforce the provisions of this Stipulation or the provisions of any related agreement or exhibit hereto.

24.     **Non-Assignment Of Claims**.  The NRF Plaintiff and his counsel represent and warrant that (i) the NRF Plaintiff is a NRF shareholder and was a NRF shareholder at all relevant times, and (ii) none of the NRF Plaintiff's claims or causes of action referred to in the Complaint or this Stipulation or in connection with the Settlement, or any claims the NRF Plaintiff could have alleged, have been assigned, encumbered, or in any manner transferred in whole or in part.

25.     **Legal Representation**.  The parties to this Stipulation acknowledge that they have been represented by qualified legal counsel both in connection with the NRF Action and in connection with the negotiation, drafting and execution of this Stipulation.  Accordingly, the language used in this Stipulation will be deemed to be language chosen by all Settling Parties

hereto to express their mutual intent, and no rule of strict construction against any Party hereto will apply to any term or condition of this Stipulation.

26.    **Compliance With Discovery Obligations**.    The NRF Plaintiff warrants that Defendants have complied with their discovery obligations established by the MOU and otherwise.

27.    **Cooperation**.    The parties to this Stipulation and their respective counsel agree to cooperate fully with one another in seeking Court approval of the Settlement and in the execution of such documents as are reasonably necessary and appropriate to obtain approval of and to implement this Stipulation, to use commercially reasonable efforts to perform all terms of this Stipulation, and to use their best efforts to have any collateral attack upon this Stipulation or the Settlement promptly dismissed or rejected.

28.    **Mistake**.    In entering into the Settlement, the NRF Plaintiff assumes the risk of any mistake of fact or law if the NRF Plaintiff should later discover that any fact he relied upon in entering into the Settlement is not true, or that their understanding of the facts or law was incorrect. In such event, the NRF Plaintiff shall not be entitled to seek rescission of the Settlement, or otherwise attack the validity of the Settlement, based on any such mistake.    The Settlement is intended to be final and binding upon the NRF Plaintiff regardless of any mistake of fact or law.

29.    **Severability**.    If any provision or provisions of this Stipulation shall be held to be invalid, illegal, unenforceable, or in conflict with the laws of the State of Maryland, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

30.    **Survival**.    To the extent permitted by law, all agreements made and orders entered during the course of the NRF Action relating to the confidentiality of documents or information shall survive this Stipulation.

**EXECUTION COPY**

IN WITNESS WHEREOF, the undersigned have executed this Stipulation

effective as of the date stated above.

Dated: June 30, 2017

/L

Charles J. Piven (Md. Fed. Bar No. 00967)
Yelena Trepetin (Md. Fed. Bar No. 28706)
BROWER PIVEN, P.C.
1925 Old Valley Road
Stevenson, MD 21153
Tel: (410) 332-0030
Fax: (410) 685-1300
piven@browerpiven.com
trepetin@browerpiven.com

Nadeem Faruqi
James M. Wilson, Jr. (*pro hac vice
forthcoming*)
FARUQI & FARUQI, LLP
685 Third Avenue, 26th Floor
New York, NY 10017
Tel: 212-983-9330
Fax: 212-983-9331

*Attorneys for Plaintiff Jack Boothe*

Andrew Gendron (Md. Bar No. 05111)
VENABLE LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
Tel: 410-244-7439
Fax: 410-244-7742
agendron@venable.com

*Attorneys for Defendants NorthStar Realty
Finance Corp., David T. Hamamoto, Judith
A. Hannaway, Wesley D. Minami, Louis J.
Paglia, Gregory Rush, and Charles W.
Schoenherr*

Of Counsel:

Michael Holmes
VINSON & ELKINS LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel: 214-220-7814
Fax: 214-999-7814

IN WITNESS WHEREOF, the undersigned have executed this Stipulation effective as of the date stated above.

Dated: June 30, 2017

_____

Charles J. Piven (Md. Fed. Bar No. 00967)
Yelena Trepetin (Md. Fed. Bar No. 28706)
BROWER PIVEN, P.C.
1925 Old Valley Road
Stevenson, MD 21153
Tel: (410) 332-0030
Fax: (410) 685-1300
piven@browerpiven.com
trepetin@browerpiven.com

Nadeem Faruqi
James M. Wilson, Jr. (*pro hac vice forthcoming*)
FARUQI & FARUQI, LLP
685 Third Avenue, 26th Floor
New York, NY 10017
Tel: 212-983-9330
Fax: 212-983-9331

*Attorneys for Plaintiff Jack Boothe*

_____

Andrew Gendron (Md. Bar No. 05111)
VENABLE LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
Tel: 410-244-7439
Fax: 410-244-7742
agendron@venable.com

*Attorneys for Defendants NorthStar Realty Finance Corp., David T. Hamamoto, Judith A. Hannaway, Wesley D. Minami, Louis J. Paglia, Gregory Rush, and Charles W. Schoenherr*

Of Counsel:

Michael Holmes
VINSON & ELKINS LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel: 214-220-7814
Fax: 214-999-7814

# EXHIBIT A

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

---

# FORM 8-K

---

### CURRENT REPORT
**Pursuant to Section 13 or 15(d)**
**of the Securities Exchange Act of 1934**

**Date of Report (Date of earliest event reported): December 9, 2016**

---

# COLONY CAPITAL, INC.
**(Exact name of registrant as specified in its charter)**

---

| | | |
|---|---|---|
| **Maryland** | **001-34456** | **27-0419483** |
| (State or other jurisdiction of incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

| | | |
|---|---|---|
| **515 S. Flower Street, 44th Floor** | | |
| **Los Angeles, CA** | | **90071** |
| (Address of principal executive offices) | | (Zip Code) |

**Registrant's telephone number, including area code: (310) 282-8820**

**Not Applicable**
**(Former name or former address, if changed since last report.)**

---

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

☒ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

### Item 8.01    Other Events

### Settlement of Certain Litigation and Supplemental Information to the Definitive Proxy Statement

As previously announced, on June 2, 2016, Colony Capital, Inc., a Maryland corporation ("Colony"), entered into an Agreement and Plans of Merger, as amended from time to time, with NorthStar Asset Management Group Inc., a Delaware corporation ("NSAM") and NorthStar Realty Finance Corp., a Maryland corporation ("NRF"), and certain subsidiary entities of NSAM and NRF, pursuant to which NSAM, Colony and NRF will combine in an all-stock merger of equals (the "Mergers"). In connection with the Mergers, each of NSAM, Colony and NRF has filed a definitive joint proxy statement with the U.S. Securities and Exchange Commission (the "SEC") on November 18, 2016, which was supplemented by the Current Report on Form 8-K filed with the SEC by each of NSAM and NRF on November 23, 2016 (the "Definitive Proxy Statement").

As previously described in the Definitive Proxy Statement, a purported stockholder of Colony filed a putative class action complaint in the United States District Court of the District of Maryland (referred to as the *Carter* action) against Colony and the members of the Colony board. The complaint alleges, among other things, that the initial joint proxy statement/prospectus and the first amendment thereto filed in respect of the Mergers omit or misstate various facts concerning the financial analyses performed by the financial advisors to Colony. Also as noted in the Definitive Proxy Statement, substantially similar claims were filed against NSAM, NRF and their respective boards of directors.

On December 9, 2016, Colony entered into a Memorandum of Understanding with the plaintiff in the *Carter* action providing for the settlement of the *Carter* action (the "Colony Memorandum of Understanding"). In the Colony Memorandum of Understanding, Colony agreed to make certain supplemental disclosures to the Definitive Proxy Statement solely for the purposes of minimizing the time, burden, and expense of litigation. The Colony Memorandum of Understanding provides that, in exchange for making these disclosures, defendants will receive, after notice to potential class members and upon court approval, a customary release of claims relating to the Mergers. Similar settlements in principle have been reached in the related litigations against NSAM, NRF, and their respective boards of directors.

Colony believes that no additional disclosure is required to supplement the Definitive Proxy Statement under applicable laws. However, to minimize the costs, risks and uncertainties inherent in litigation and to avoid any potential delay of the consummation of the Mergers, and without admitting any liability or wrongdoing, Colony has agreed, pursuant to the Colony Memorandum of Understanding, to make certain supplemental disclosures to the Definitive Proxy Statement as set forth below.

The supplemental disclosure to the Definitive Proxy Statement set forth in this Current Report on Form 8-K should be read in conjunction with the Definitive Proxy Statement, which should be read in its entirety. To the extent that information in this Current Report on Form 8-K differs from information contained in the Definitive Proxy Statement, the information in this Current Report on Form 8-K shall supersede such information contained in the Definitive Proxy Statement. Defined terms not defined herein have the meanings set forth in the Definitive Proxy Statement. Underlined text shows text being added to a referenced disclosure in the Definitive Proxy Statement in the case of an amended and restated disclosure.

### Supplemental Information to the Definitive Proxy Statement

*The following disclosure supplements and restates the third sentence of the first full paragraph on page 176 of the Definitive Proxy Statement in the section entitled "The Mergers—Certain Unaudited Prospective Financial Information of NSAM":*

The NSAM Standalone Projections include certain non-GAAP financial measures, such as Net Revenues, EBITDA and CAD (each as defined below).

*The following disclosure supplements the disclosure in the section entitled "The Mergers—Certain Unaudited Prospective Financial Information of NSAM" beginning on page 175 of the Definitive Proxy Statement:*

Set forth in the table below is a reconciliation of NSAM's projection of CAD (a non-GAAP financial measure), as included in the NSAM Standalone Financial Projections, to Net Income (a GAAP financial measure) for the periods indicated below.

As described in more detail on pages 175 and 176 of the Definitive Proxy Statement, NSAM does not, as a matter of course, publicly disclose long-term projections as to future revenues, earnings or other results given, among other reasons, the uncertainty, unpredictability and subjectivity of the underlying assumptions and estimates. The inclusion of this information in the Definitive Proxy Statement as well as in the supplemental disclosure as set forth in this Current Report on Form 8-K should not be regarded as an indication that the NSAM special committee, the NSAM board, their respective advisors or any other person considered, or now considers, the NSAM Standalone Projections to be material or to be necessarily predicative of actual future results and the NSAM Standalone Projections should not be relied upon as such.

The NSAM Standalone Projections were previously included in the Definitive Proxy Statement. The NSAM Standalone Projections, as supplemented in this Current Report on Form 8-K, were not, as described in more detail in the Definitive Proxy Statement, prepared with a view toward public disclosure or toward complying with GAAP, the published guidelines of the SEC regarding projections and the use of non-GAAP measures or the guidelines established by the American Institute of Certified Public Accountants for the preparation and presentation of prospective financial information. In addition, the disclosure of the NSAM Standalone Projections in the Definitive Proxy Statement, as supplemented by this Current Report on Form 8-K, is not being made to influence your decision whether to vote for or against the NSAM merger proposal and the NSAM charter proposal.

| | Years Ending December 31[3], | | |
| --- | --- | --- | --- |
| | 2016E | 2017E | 2018E |
| | | ($ in millions) | |
| Net Income (Loss) Attributable to Common Stockholders | $ 150 | $ 182 | $ 227 |
| Non-controlling Interests Attributable to the Operating Partnership | 1 | 2 | 2 |
| *Adjustments*: | | | |
| Equity-based Compensation | 59 | 54 | 36 |
| Adjustment Related to Joint Ventures | 14 | 6 | 4 |
| Depreciation and Amortization Items | 12 | 12 | 13 |
| Cash Available for Distribution (CAD)[1][2] | $ 237 | $ 256 | $ 281 |

(1) CAD is defined as set forth in footnote 3 to the table on page 177 of the Definitive Proxy Statement in the section entitled "The Mergers—Certain Unaudited Prospective Financial Information of NSAM."

(2) Amounts in this row may not equal the sum of amounts reflected in the preceding rows due to rounding.

(3) As described in more detail on page 176 of the Definitive Proxy Statement, the NSAM Standalone Projections, including the items set forth in this table, were based on numerous variables and assumptions that were deemed to be reasonable as of the respective dates when such projections were finalized. Such assumptions are inherently uncertain and may be beyond the control of NSAM.

*The following disclosure supplements and restates the third sentence of the last paragraph on page 205 of the Definitive Proxy Statement (carrying over to page 206) in the section entitled "The Mergers—Certain Unaudited Prospective Financial Information of NRF":*

The NRF Standalone Projections include certain non-GAAP financial measures, such as NOI & Other Revenue, EBITDA before Equity-Comp and CAD (each as defined below).

*The following disclosure supplements the disclosure in the section entitled "The Mergers—Certain Unaudited Prospective Financial Information of NRF" beginning on page 205 of the Definitive Proxy Statement:*

Set forth in the table below is a reconciliation of NRF's projection of CAD (a non-GAAP financial measure), as included in the NRF Standalone Financial Projections, to Net Income (a GAAP financial measure) for the periods indicated below. As described in more detail on pages 205 and 206 of the Definitive Proxy Statement, NRF does not, as a matter of course, publicly disclose long-term projections as to future revenues, earnings or other results given, among other reasons, the uncertainty, unpredictability and subjectivity of the underlying assumptions and estimates. The inclusion of this information in the Definitive Proxy Statement as well as in the supplemental disclosure as set forth in this Current Report on Form 8-K should not be regarded as an indication that the NRF special committee, the NRF board, their respective advisors or any other person considered, or now considers, the NRF Standalone Projections to be material or to be necessarily predicative of actual future results and the NRF Standalone Projections should not be relied upon as such.

The NRF Standalone Projections were previously included in the Definitive Proxy Statement. The NRF Standalone Projections, as supplemented in this Current Report on Form 8-K, were not, as described in more detail in the Definitive Proxy Statement, prepared with a view toward public disclosure or toward complying with GAAP, the published guidelines of the SEC regarding projections and the use of non-GAAP measures or the guidelines established by the American Institute of Certified Public Accountants for the preparation and presentation of prospective financial information. In addition, the disclosure of the NRF Standalone Projections in the Definitive Proxy Statement, as supplemented by this Current Report on Form 8-K, is not being made to influence your decision whether to vote for or against the NRF merger proposal and the NRF charter proposal.

- 3 -

| | Years Ending December 31[4], | | |
| --- | --- | --- | --- |
| | 2016E | 2017E | 2018E |
| | | ($ in millions) | |
| Net Income (Loss) Attributable to Common Stockholders | $ 63 | $ 20 | $ (24) |
| Non-controlling Interests | 1 | (31) | (27) |
| *Adjustments:* | | | |
| Depreciation and Amortization Items [1] | 382 | 354 | 386 |
| N-Star CDO Bond Discounts | 25 | 18 | — |
| Net Interest Income in Consolidated N-Star CDOs | (35) | (30) | (21) |
| Distributions / Adjustments to Joint Venture Partners | (37) | (50) | (51) |
| Other | 19 | 6 | — |
| Cash Available for Distribution (CAD)[2][3] | $ 417 | $ 288 | $ 263 |

(1) Includes depreciation and amortization, straight-line rental revenue, amortization of above/below market leases and equity-based compensation expense.

(2) CAD is defined as set forth in footnote 4 to the table on page 207 of the Definitive Proxy Statement in the section entitled "The Mergers—Certain Unaudited Prospective Financial Information of NRF."

(3) Amounts in this row may not equal the sum of amounts reflected in the preceding rows due to rounding.

(4) As described in more detail on page 206 of the Definitive Proxy Statement, the NRF Standalone Projections, including the items set forth in this table, were based on numerous variables and assumptions that were deemed to be reasonable as of the respective dates when such projections were finalized. Such assumptions are inherently uncertain and may be beyond the control of NRF.

*The following disclosure supplements and restates the third sentence of the third full paragraph on page 191 of the Definitive Proxy Statement in the section entitled "The Mergers—Certain Unaudited Prospective Financial Information of Colony":*

The Colony Standalone Projections include certain non-GAAP financial measures, such as Net Revenues, EBITDA and Core FFO (each as defined below).

*The following disclosure supplements the disclosure in the section entitled "The Mergers—Certain Unaudited Prospective Financial Information of Colony" beginning on page 191 of the Definitive Proxy Statement:*

Set forth in the table below is a reconciliation of Colony's projection of Core FFO (a non-GAAP financial measure), as included in the Colony Standalone Financial Projections, to Net Income (a GAAP financial measure) for the periods indicated below. As described in more detail on pages 191 and 192 of the Definitive Proxy Statement, Colony does not, as a matter of course, publicly disclose long-term projections as to future revenues, earnings or other results given, among other reasons, the uncertainty, unpredictability and subjectivity of the underlying assumptions and estimates. The inclusion of this information in the Definitive Proxy Statement as well as in the supplemental disclosure as set forth in this Current Report on Form 8-K should not be regarded as an indication that the Colony board, their respective advisors or any other person considered, or now considers, the Colony Standalone Projections to be material or to be necessarily predicative of actual future results and the Colony Standalone Projections should not be relied upon as such.

The Colony Standalone Projections were previously included in the Definitive Proxy Statement. The Colony Standalone Projections, as supplemented in this Current Report on Form 8-K, were not, as described in more detail in the Definitive Proxy Statement, prepared with a view toward public disclosure or toward complying with GAAP, the published guidelines of the SEC regarding projections and the use of non-GAAP measures or the guidelines established by the American Institute of Certified Public Accountants for the preparation and presentation of prospective financial information. In addition, the disclosure of the Colony Standalone Projections in the Definitive Proxy Statement, as supplemented by this Current Report on Form 8-K, is not being made to influence your decision whether to vote for or against the Colony merger proposal and the Colony charter proposal.

- 4 -

8-K

| | Years Ending December 31[3], | | |
|---|---|---|---|
| | 2016E | 2017E | 2018E |
| | | ($ in millions) | |
| Net Income Attributable to Common Stockholders | $ 100 | $ 157 | $ 225 |
| Net Income Attributable to Non-controlling Common Interests in Operating Company | 19 | 29 | 41 |
| Real Estate Depreciation and Amortization | 174 | 165 | 130 |
| Gain on Sales of Real Estate | (56) | (47) | (18) |
| Adjustments Attributable to Non-controlling Interests in Investment Entities | (26) | (31) | (35) |
| FFO Attributable to Common Interests in Operating Company and Common Stockholders | $ 211 | $ 273 | $ 343 |
| Gain on Sales of Real Estate | 56 | 47 | 18 |
| Accumulated Depreciation and Amortization on Sale of Real Estate Previously Adjusted for FFO | (5) | (12) | 0 |
| Noncash Equity Compensation Expense | 14 | 19 | 23 |
| Straight-Line Rent Revenue | 0 | (3) | (2) |
| Amortization of Deferred Financing and Debt Premiums and Discounts | 22 | 18 | 15 |
| Amortization of Investment Management Intangibles | 17 | 12 | 7 |
| Deferred Tax Benefit from Amortization of Investment Management Intangibles | (7) | (5) | (3) |
| Amortization of Gain on Remeasurement of Consolidated Investment Entities, Net | 4 | 4 | 2 |
| Non-Real Estate Depreciation and Amortization | 4 | 4 | 4 |
| Gain on Change in Fair Value of Contingent Consideration | (10) | 0 | 0 |
| Adjustments Attributable to Non-controlling Interests in Investment Entities | (35) | (27) | (18) |
| Core FFO Attributable to Common Interests in Operating Company and Common Stockholders[1][2] | $ 271 | $ 330 | $ 389 |

(1) Core FFO is defined as set forth in footnote 2 to the table on page 192 of the Definitive Proxy Statement in the section entitled "The Mergers—Certain Unaudited Prospective Financial Information of Colony."

(2) Amounts in this row may not equal the sum of amounts reflected in the preceding rows due to rounding.

(3) As described in more detail on pages 191 and 192 of the Definitive Proxy Statement, the Colony Standalone Projections, including the items set forth in this table, were based on numerous variables and assumptions that were deemed to be reasonable as of the respective dates when such projections were finalized. Such assumptions are inherently uncertain and may be beyond the control of Colony.

*The section entitled "The Mergers—Opinion of NSAM's Financial Advisor" beginning on page 166 of the Definitive Proxy Statement is supplemented by adding the following paragraph immediately before the section entitled "The Mergers—Opinion of NSAM's Financial Advisor—Summary of Material Financial Analysis" on page 168 of the Definitive Proxy Statement:*

Following Goldman Sachs' presentation to the NSAM board on June 2, 2016 (which we refer to as the June 2 Presentation), it was determined that the estimates of levered free cash flows for NSAM for the second quarter through the fourth quarter of 2016 used in the illustrative discounted cash flow analyses of NSAM did not reflect the Forecasts, which resulted in the incorrect calculation of the range of illustrative present values derived from the discounted cash flow analyses, the range of NSAM's equity percentage of the combined pro forma company resulting from the leveraged discounted cash flow and dividend discount model contribution analysis and the range of implied equity values resulting from the illustrative NSAM's standalone levered discounted cash flow to illustrative dividend discount model analysis. Goldman Sachs subsequently performed such analyses, as of June 2, 2016, using the corrected estimates and calculations (as corrected, collectively referred to as the "Corrected Estimates and Calculations"). Based upon and subject to the foregoing, Goldman Sachs confirmed to the NSAM board that, had Goldman Sachs performed its financial analyses set forth in the presentation on June 2, 2016 using the Corrected Estimates and Calculations, there would have been no change to the conclusion set forth in the written opinion of Goldman Sachs. Goldman Sachs' confirmation does not address any circumstances, developments or events occurring after the date of the written opinion of Goldman Sachs, other than in relation to the Corrected Estimates and Calculations, and Goldman Sachs' opinion set forth in the written opinion of Goldman Sachs is provided only as of such date.

*The following disclosure supplements and restates the last full sentence in the section entitled "The Mergers—Opinion of NSAM's Financial Advisor—Illustrative NSAM Standalone Levered Discounted Cash Flow Analysis" beginning page 170 of the Definitive Proxy Statement:*

Goldman Sachs then divided the range of illustrative equity values it derived by the number of fully diluted outstanding shares of NSAM, as provided by management of NSAM. As set forth in the June 2 Presentation, this analysis indicated a range of illustrative present values of $10.41 to $14.04 per share of NSAM common stock, and using the Corrected Estimates and Calculations, this analysis indicated a range of illustrative present values of $10.84 to $14.47 per share of common stock.

*The following disclosure supplements and restates the last sentence in the fourth full paragraph and the table immediately thereafter in the section entitled "The Mergers—Opinion of NSAM's Financial Advisor—Illustrative Contribution Analysis" beginning on page 172*

of the Definitive Proxy Statement:

- 5 -

The following table summarizes this analysis as set forth in the June 2 Presentation:

| NSAM Shareholder Equity of Pro Forma Combined Company | Implied Exchange Ratio |
|---|---|
| 22.5% - 31.3% | 0.59 - 0.93 |

The following table summarizes this analysis, using the Corrected Estimates and Calculations:

| NSAM Shareholder Equity of Pro Forma Combined Company | Implied Exchange Ratio |
|---|---|
| 23.2% - 32.0% | 0.62 - 0.96 |

*The following disclosure supplements and restates the last sentence in the first full paragraph and the table immediately thereafter in the section entitled "The Mergers—Opinion of NSAM's Financial Advisor—Comparison of Illustrative NSAM Standalone Levered Discounted Cash Flow Analysis to Illustrative Dividend Discount Model Analysis" beginning on page 173 of the Definitive Proxy Statement:*

The chart below illustrates the comparison range of implied equity values for the above analysis as set forth in the June 2 Presentation:

| Illustrative Standalone Levered DCF Analysis | Illustrative Pro Forma Dividend Discount Model Analysis |
|---|---|
| $10.41 - $14.04 | $12.21 - $17.08 |

The chart below illustrates the comparison range of implied equity values for the above analysis using the Corrected Estimates and Calculations:

| Illustrative Standalone Levered DCF Analysis | Illustrative Pro Forma Dividend Discount Model Analysis |
|---|---|
| $10.84 - $14.47 | $12.21 - $17.08 |

**Additional Supplemental Disclosure**

*The following disclosure supplements and restates the second full paragraph in the section entitled "The Mergers—Listing of Colony NorthStar Stock" beginning on page 227 of the Definitive Proxy Statement and the second full paragraph in the section entitled "Description of Colony NorthStar Capital Stock—Listing" beginning on page 365 of the Definitive Proxy Statement.*

Colony NorthStar preferred stock is currently not traded or quoted on a stock exchange or quotation system. Following the Mergers, Colony NorthStar preferred stock is expected to be listed for trading on the NYSE. It is anticipated that: Colony NorthStar series A preferred stock will be listed under the symbol "CLNS PR A"; Colony NorthStar series B preferred stock will be listed under the symbol "CLNS PR B"; Colony NorthStar series C preferred stock will be listed under the symbol "CLNS PR C"; Colony NorthStar series D preferred stock will be listed under the symbol "CLNS PR D"; Colony NorthStar series E preferred stock will be listed under the symbol "CLNS PR E"; Colony NorthStar series F preferred stock will be listed under the symbol "CLNS PR F"; Colony NorthStar series G preferred stock will be listed under the symbol "CLNS PR G"; and Colony NorthStar series H preferred stock will be listed under the symbol "CLNS PR H."

*      *      *

- 6 -

**Cautionary Statement Regarding Forward-Looking Statements**

This current report may contain forward-looking statements within the meaning of the federal securities laws. Forward-looking statements relate to expectations, beliefs, projections, future plans and strategies, anticipated events or trends and similar expressions concerning matters that are not historical facts. In some cases, you can identify forward-looking statements by the use of forward-looking terminology such as "may," "will," "should," "expects," "intends," "plans," "anticipates," "believes," "estimates," "predicts," or "potential" or the negative of these words and phrases or similar words or phrases which are predictions of or indicate future events or trends and which do not relate solely to historical matters. Forward-looking statements involve known and unknown risks, uncertainties, assumptions and contingencies, many of which are beyond our control, and may cause actual results to differ significantly from those expressed in any forward-looking statement. Among others, the following uncertainties and other factors could cause actual results to differ from those set forth in the forward looking statements: the failure to receive, on a timely basis or otherwise, the required approvals by NSAM, Colony and NRF stockholders, governmental or regulatory agencies and third parties; the risk that a condition to closing of the merger may not be satisfied; each company's ability to consummate the merger; operating costs and business disruption may be greater than expected; the ability of each company to retain its senior executives and maintain relationships with business partners pending consummation of the merger; the ability to realize substantial efficiencies and synergies as well as anticipated strategic and financial benefits; and the impact of legislative, regulatory and competitive changes. The foregoing list of factors is not exhaustive. Additional information about these and other factors can be found in each company's reports filed from time to time with the SEC, including NSAM's and NRF's Quarterly Report on Form 10-Q for the quarter ended June 30, 2016 and Colony's Quarterly Report on Form 10-Q for the quarter ended September 30, 2016. There can be no assurance that the merger will in fact be consummated.

We caution investors not to unduly rely on any forward-looking statements. The forward-looking statements speak only as of the date of this report. None of NSAM, Colony or NRF is under any duty to update any of these forward-looking statements after the date of this report, nor to conform prior statements to actual results or revised expectations, and none of NSAM, Colony or NRF intends to do so.

**Additional Information and Where to Find It**

In connection with the proposed transaction, Colony NorthStar, Inc. ("Colony NorthStar"), a Maryland subsidiary of NSAM that will be the surviving parent company of the combined company, filed with the SEC a registration statement on Form S-4 (File No.: 333-212739) that includes a joint proxy statement of NSAM, Colony and NRF and that also constitutes a prospectus of Colony NorthStar. The registration statement was declared effective by the SEC on November 18, 2016 and, on or about November 18, 2016, each of NSAM, Colony and NRF commenced mailing the joint proxy statement in definitive form to their respective stockholders of record as of the close of business on November 2, 2016. Each of NSAM, Colony, NRF and Colony NorthStar may also file other documents with the SEC regarding the proposed transaction. This document is not a substitute for the joint proxy statement/prospectus or registration statement or any other document which NSAM, Colony, NRF or Colony NorthStar may file with the SEC. INVESTORS AND SECURITY HOLDERS OF NSAM, COLONY AND NRF ARE URGED TO READ THE DEFINITIVE JOINT PROXY STATEMENT/PROSPECTUS FILED BY EACH OF NSAM, COLONY AND NRF ON NOVEMBER 18, 2016, THE CURRENT REPORTS ON FORM 8-K FILED BY EACH OF NSAM, COLONY AND NRF ON JUNE 3, 2016, JUNE 7, 2016, JUNE 8, 2016, JULY 29, 2016 AND OCTOBER 17, 2016 IN CONNECTION WITH THE MERGER AGREEMENT, THE CURRENT REPORT ON FORM 8-K FILED BY NSAM ON NOVEMBER 7, 2016 IN CONNECTION WITH THE MERGER AGREEMENT, AND ANY OTHER RELEVANT DOCUMENTS THAT ARE FILED OR WILL BE FILED WITH THE SEC, AS WELL AS ANY AMENDMENTS OR SUPPLEMENTS TO THESE DOCUMENTS, CAREFULLY AND IN THEIR ENTIRETY BECAUSE THEY CONTAIN OR WILL CONTAIN IMPORTANT INFORMATION ABOUT THE PROPOSED TRANSACTION AND RELATED MATTERS. Investors and security holders may obtain free copies of the registration statement and the joint proxy statement/prospectus and other documents filed with the SEC by NSAM, Colony, NRF and Colony NorthStar (when available) through the web site maintained by the SEC at www.sec.gov or by contacting the investor relations department of NSAM, Colony or NRF at the following:

Contacts:
NorthStar Asset Management Group Inc.
Megan Gavigan / Emily Deissler / Hayley Cook
Sard Verbinnen & Co.
(212) 687-8080

Colony Capital, Inc.
Owen Blicksilver
Owen Blicksilver PR, Inc.
(516) 742-5950
or

8-K

Lasse Glassen
Addo Communications, Inc.
(310) 829-5400
lglassen@aaddoir.com

NorthStar Realty Finance Corp.
Joe Calabrese
Investor Relations
(212) 827-3772

- 7 -

**Participants in the Solicitation**

Each of NSAM, Colony and NRF and their respective directors and executive officers may be deemed to be participants in the solicitation of proxies from their respective stockholders in connection with the proposed transaction. Information regarding NSAM's directors and executive officers, including a description of their direct interests, by security holdings or otherwise, is contained in NSAM's Annual Report on Form 10-K for the year ended December 31, 2015, as amended by its Form 10-K/A filed with the SEC on April 29, 2016 and Current Reports on Form 8-K filed by NSAM with the SEC on June 3, 2016, June 7, 2016, June 8, 2016, July 29, 2016, October 17, 2016 and November 7, 2016 in connection with the proposed transaction. Information regarding Colony's directors and executive officers, including a description of their direct interests, by security holdings or otherwise, is contained in Colony's Annual Report on Form 10-K for the year ended December 31, 2015, its annual proxy statement filed with the SEC on March 31, 2016 and Current Reports on Form 8-K filed by Colony with the SEC on June 3, 2016, June 7, 2016, June 8, 2016, July 29, 2016 and October 17, 2016 in connection with the proposed transaction. Information regarding NRF's directors and executive officers, including a description of their direct interests, by security holdings or otherwise, is contained in NRF's Annual Report on Form 10-K for the year ended December 31, 2015, as amended by its Form 10-K/A filed with the SEC on April 28, 2016 and Current Reports on Form 8-K filed by NRF with the SEC on June 3, 2016, June 7, 2016, June 8, 2016, July 29, 2016 and October 17, 2016 in connection with the proposed transaction. A more complete description is available in the definitive joint proxy statement/prospectus filed by each of NSAM, Colony and NRF with the SEC on November 18, 2016. You may obtain free copies of these documents as described in the preceding paragraph.

**No Offer or Solicitation**

This current report is not intended to and shall not constitute an offer to sell or the solicitation of an offer to sell or the solicitation of an offer to buy any securities or a solicitation of any vote of approval, nor shall there be any sale of securities in any jurisdiction in which such offer, solicitation or sale would be unlawful prior to registration or qualification under the securities laws of any such jurisdiction. No offer of securities shall be made except by means of a prospectus meeting the requirements of Section 10 of the Securities Act of 1933, as amended.

- 8 -

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

Date: December 9, 2016

**COLONY CAPITAL, INC.**

**By:**   /s/ Darren J. Tangen
**Name:**  **Darren J. Tangen**
**Title:**   **Chief Financial Officer and Treasurer**

- 9 -

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

- - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| JACK BOOTHE, Individually and on Behalf of All Others Similarly Situated, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| NORTHSTAR REALTY FINANCE CORP., et. al. | :   Case No. 16-cv-03742-JFM |
| | : |
| Defendants. | : |
| | : |

- - - - - - - - - - - - - - - - - - - -

<u>ORDER PRELIMINARILY APPROVING SETTLEMENT</u>

**WHEREAS**, the consolidated action styled *Jack Boothe* v. *NorthStar Realty Finance Corp., et al.*, Case No. 16-cv-03742 (the "NRF Action") is pending before the Court.

**WHEREAS**, the parties to the NRF Action have applied pursuant to Rules 23, 23.1, and 41 of the Federal Rules of Civil Procedure for preliminary approval of the proposed settlement (the "Settlement") in accordance with the Stipulation of Settlement entered into by the Parties dated as of June 30, 2017 (the "Stipulation"), upon the terms and conditions set forth in the Stipulation. The Stipulation (a copy of which has been filed with the Court) contemplates, among other things, certification by the Court of a class in the NRF Action, solely for purposes of the Settlement.

**WHEREAS**, the Court, having heard arguments of counsel, having reviewed the Stipulation, its exhibits, and other submissions of the parties, having considered all of the files, records, and pleadings in this NRF Action, and being otherwise fully advised, and the parties having consented to the entry of this Preliminary Approval Order.

- 1 -

**NOW, THEREFORE, IT IS HEREBY ORDERED**, pursuant to Rules 23, 23.1, and 41 of the Federal Rules of Civil Procedure, that:

1.      The Court preliminarily approves the Settlement set forth in the Stipulation as fair, reasonable, adequate and in the best interests of the Settlement Class[1] and NRF in its capacity as nominal defendant.

2.      For purposes of the Settlement only, the Court preliminarily finds and determines that this NRF Action may proceed as a non-opt-out class action pursuant to Rules 23(a), 23(b)(1) and/or (b)(2) of the Federal Rules of Civil Procedure, on behalf of a class consisting of all record and beneficial holders of NRF's common stock, their respective successors in interest, successors, predecessors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors and successors and assigns, who held NRF common stock at any time between and including May 6, 2016 and January 17, 2017, but excluding the Defendants, their subsidiaries or other affiliates, their assigns, members of their immediate families, officers of NRF, and the legal representatives, heirs, successors, or assigns of any such excluded person (the "Settlement Class" or the "Class Members"), and further preliminarily finds and determines that Jack Boothe ("Plaintiff") and the law firms of Co-Lead Counsel Brower Piven, P.C. and Faruqi & Faruqi, LLP (collectively "Class Counsel") will fairly and adequately represent the interest of the Settlement Class in enforcing their rights in the NRF Action.

3.      The Court preliminarily concludes, based on the information submitted to date, that each of the provisions of Federal Rule of Civil Procedure 23 has been satisfied, and the NRF

---

[1]      Undefined capitalized terms herein carry the meanings assigned in the Stipulation.

Action can properly be maintained for settlement purposes according to the provisions of Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2). Specifically, the Court finds that (a) the Settlement Class is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Plaintiff as representative plaintiff are typical of the claims of the Settlement Class; (d) the Plaintiff and his counsel have fairly and adequately protected and represented the interests of the Settlement Class; (e) prosecuting separate actions by individual Class Members would create a risk of inconsistent or varying adjudications that would establish inconsistent standards of conduct for the Defendants; and (f) Defendants have acted on grounds that generally apply to the Settlement Class.

4.     A hearing (the "Final Settlement Hearing") shall be held on _____, 2017 at _____, in the U.S. District Court for the District of Maryland, Northern Division, at the United States Courthouse, 101 West Lombard Street, Baltimore, MD 21201, Room ___ to determine (i) whether the Settlement Class should be finally certified, (ii) whether the Settlement set forth in the Stipulation should be finally approved as fair, reasonable, adequate, and in the best interests of the Settlement Class, (iii) whether a final judgment should be entered dismissing the claims of the Plaintiff and Class Members with prejudice, as required by the Stipulation and releasing claims as required by the Stipulation, (iv) whether and, if so, in what amount to award attorneys' fees and reimbursement of expenses to Plaintiff's counsel pursuant to the Fee Application to be filed as referenced herein (if any), and (v) any objections to the Settlement and/or the Fee Application.

5.     Having reviewed the form and content of the proposed form of Notice submitted by the parties as Exhibit C to the Stipulation, the Court hereby approves such Notice and directs

that the Company shall mail, or cause to be mailed, such Notice to all Class Members who are

reasonably identifiable, at their last known addresses set forth in the stock transfer records

maintained by or on behalf of NRF.  The mailing is to be made by first class United States mail,

postage prepaid at least sixty (60) calendar days before the date of the Final Settlement Hearing.

All record holders in the Settlement Class who were not also the beneficial owners of the shares

of NRF common stock held by them of record are requested to forward the Notice to such

beneficial owners of those shares.  NRF shall use reasonable efforts to give, or cause to be given,

notice to such beneficial owners by (a) making, or causing to be made, additional copies of the

Notice available to any record holder who, prior to the Settlement Hearing, requests copies for

distribution to beneficial owners, or (b) mailing, or causing to be mailed, additional copies of the

Notice to beneficial owners as reasonably requested by record holders who provide names and

addresses for such beneficial holders.

6.     The Court finds and determines that mailing of the Notice constitutes the best

notice practicable under the circumstances, constitutes due and sufficient notice of the Settlement

and the matters set forth in the Notice to all persons entitled to receive notice, and fully satisfies

the requirements of due process and of Rules 23 and 23.1 of the Federal Rules of Civil

Procedure.

7.     Defendants shall, no later than ten (10) calendar days following the filing of the

Stipulation with the Court, serve upon the appropriate State official of each State in which a

Member of the Settlement Class resides and the Attorney General of the United States a notice of

the proposed settlement (the "CAFA Notice") in compliance with the requirements of the Class

Action Fairness Act, 28 U.S.C. § 1715 et seq. ("CAFA").  Defendants are solely responsible for

the costs of the CAFA Notice and administering the CAFA Notice.  Not later than seven (7)

calendar days after service of the CAFA Notice, Defendants shall cause to be served on Class

Counsel and filed with the Court proof, by affidavit or declaration, regarding compliance with

CAFA § 1715(b).

8.    At least seven (7) calendar days prior to the Final Settlement Hearing, the

Company shall cause an affidavit or declaration to be filed with the Court and served on Class

Counsel certifying that the Notice has been mailed as directed in this Preliminary Approval

Order.

9.    All papers in support of final approval of the Settlement shall be filed with the

Court and served upon all counsel of record at least thirty-five (35) calendar days prior to the

date of the Final Settlement Hearing.  All papers in support of any requested award of attorneys'

fees and reimbursement of expenses to Class Counsel (a "Fee Application") shall be filed with

the Court and served upon counsel of record at least thirty-five (35) calendar days prior to the

date of the Final Settlement Hearing.  Any reply papers shall be filed at least seven (7) calendar

days prior to the date of the Final Settlement Hearing.

10.    Any Class Member who wishes to object to the Settlement and/or the award of

attorneys' fees and reimbursement of expenses to Class Counsel, or to appear at the Final

Settlement Hearing and show cause, if any, why the Settlement should not be approved as fair,

reasonable, adequate, and in the best interests of the Settlement Class, or why a final judgment

should not be entered thereon, must serve and file a written notice of intention to appear at the

Final Settlement Hearing and/or copies of any papers they ask the Court to consider in

connection with issues to be addressed at the Final Settlement Hearing.  Such notice of intention

to appear and objections must be addressed to the Clerk of Court; must refer to the action *Jack

Boothe* v. *NorthStar Realty Finance Corp., et al.*, Case No. 16-cv-03742, and must be filed with,

and received by, the Clerk of Court at least twenty-one (21) calendar days prior to the date of the

Final Settlement Hearing by hand delivery or first class mail, postage prepaid, at:

> Clerk of Court
> U.S. District Court for the District of Maryland, Northern Division
> 101 West Lombard Street
> Baltimore, MD 21201

Any such submission must provide a detailed statement of such person's specific objections to

any matter before the Court and the grounds therefor and must include all documents and other

writings such person wishes the Court to consider.  Copies of any such submission and all

included materials also must be served upon the following counsel by hand delivery or first class

mail, postage prepaid, on or before that same date:

> Charles J. Piven (Md. Fed. Bar No. 00967)
> Yelena Trepetin (Md. Fed. Bar No. 28706)
> BROWER PIVEN, P.C.
> 1925 Old Valley Road Stevenson, MD 21153
> Tel: (410) 332-0030
> Fax: (410) 685-1300
> piven@browerpiven.com
> trepetin@browerpiven.com
>
> Nadeem Faruqi
> James M. Wilson, Jr. (*pro hac vice forthcoming*)
> FARUQI & FARUQI, LLP
> 685 Third Avenue, 26th Floor
> New York, NY 10017
> Tel: 212-983-9330
> Fax: 212-983-9331
>
> *Attorneys for Plaintiff Jack Boothe*
>
> and
>
> Andrew Gendron (Md. Bar No. 05111)
> VENABLE LLP
> 750 E. Pratt Street, Suite 900
> Baltimore, MD 21202
> Tel: 410-244-7439
> Fax: 410-244-7742
> agendron@venable.com

- 6 -

Michael Holmes
VINSON & ELKINS LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel: 214-220-7814
Fax: 214-999-7814

*Attorneys for Defendants NorthStar Realty Finance Corp.,*
*David T. Hamamoto, Judith A. Hannaway, Wesley D. Minami,*
*Louis J. Paglia, Gregory Rush, and Charles W. Schoenherr*

11.     No person shall be entitled to object to the Settlement, to the final judgment to be entered in this action, or to any award of attorneys' fees and reimbursement of expenses to Class Counsel, or otherwise to be heard, except by serving and filing a written notice of intention to appear and written objections in the form and manner, and by the date, required by the Notice and the terms of this Preliminary Approval Order.  Any person who fails to object in the manner and by the date required shall be deemed to have waived any right to object (including any right to appeal), and shall be forever barred from raising such objections in this or any other action or proceeding.

12.     From the date of this Preliminary Approval Order until the Court enters its order determining whether a final judgment should be entered on the terms required by the Stipulation, the Plaintiff and all Class Members, and any of them, are barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement, prosecution or instigation of any action asserting any Released Claims, either directly, representatively, derivatively, or in any other capacity, against any Released Party.

13.     All proceedings in this action, other than proceedings as may be necessary to carry out the terms and conditions of the Settlement, are hereby stayed and suspended until further order of the Court.

14.     Upon entry of final judgment after the Final Settlement Hearing, the Plaintiff and all Class Members shall be forever barred from commencing, prosecuting, instigating, or in any way participating in the commencement, prosecution or instigation of any action asserting any Released Claims, either directly, representatively, derivatively, or in any other capacity, against any Released Party.

15.     If the Court does not approve the Settlement, or the Settlement does not become effective for any reason whatsoever, the Settlement (including any modification thereof made with the consent of the parties as provided for in the Stipulation), any class certification herein, and any actions taken or to be taken in connection therewith (including this Preliminary Approval Order and any judgment entered herein) shall be terminated and shall become void and of no further force and effect except for the Company's obligation to pay for any expense incurred in connection with mailing the Notice and the CAFA Notice, and the NRF Action shall proceed without prejudice to any party as to any matter of law or fact, as if the MOU had not been entered into and the Stipulation had not been made and had not been submitted to the Court. Nevertheless, in such event, Class Counsel have reserved the right to apply for an award of attorneys' fees, costs and expenses and Defendants have reserved the right to oppose such an application.

16.     Neither the Stipulation, any provisions in the Stipulation, any document or instrument contemplated thereby, nor any negotiations, statements or proceedings in connection therewith, shall be (i) construed as, or deemed to be evidence of, or a presumption, concession or admission on the part of the Plaintiff, any Defendant, any Class Member, or any other person of any liability or wrongdoing by them, or any of them, or (ii) offered or received in evidence in

any action or proceeding, or used in any way as a presumption, concession, admission or evidence of any liability or wrongdoing of any nature.

17.    The Final Settlement Hearing may, from time to time and without further notice to Class Members, be continued or adjourned by order of the Court without further notice of any kind other than announcement at the Final Settlement Hearing or at any later hearing.

18.    The Court retains jurisdiction to consider all further applications arising out of or connected with the Settlement.  The Court may approve the Settlement with such modifications as may be agreed to by the Parties in writing, if appropriate, without further notice to the Class.

SO ORDERED.

Dated: _____, 2017


_____
The Honorable J. Frederick Motz
United States District Judge

# EXHIBIT C

**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

- - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| JACK BOOTHE, Individually and on Behalf of All Others Similarly Situated, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| NORTHSTAR REALTY FINANCE CORP., et. al. | : Case No. 16-cv-03742-JFM |
| | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - -

<u>NOTICE OF PENDENDCY AND PROPOSED SETTLEMENT OF CLASS ACTION
AND HEARING</u>

TO: ALL RECORD HOLDERS AND BENEFICIAL OWNERS OF COMMON STOCK OF NORTHSTAR REALTY FINANCE CORP. WHO HELD OR OWNED SUCH STOCK AT ANY TIME BETWEEN AND INCLUDING MAY 6, 2016, AND JANUARY 17, 2017, EITHER OF RECORD OR BENEFICIALLY (THE "SETTLEMENT CLASS" AND "CLASS MEMBER(S)").

*This Notice is for your information only.* ***You are not being sued. You do not need to appear in court. You do not need to hire an attorney in this case.***

*This Notice describes (i) a class action lawsuit against NorthStar Realty Finance Corp. ("NRF" or the "Company"), and the members of the board of directors (the "Board") of NRF (the "Director Defendants") and (ii) the proposed settlement of that lawsuit. You have received this Notice because you may be one of the people whose rights will be affected by the lawsuit and the proposed settlement. If you wish to object to the proposed settlement, you must do so in the manner described below on or before _____, 2017.*

*The remainder of this Notice contains important information. You should read the entire Notice carefully.*

**I.    *The Purpose Of This Notice*.**

This Notice is given to you pursuant to Rules 23 and 23.1 of the Federal Rules of Civil Procedure and an order of the United States District Court for the District of Maryland, Northern Division (the "Court"), where the lawsuit is pending. This Notice tells you about the lawsuit, the

- 1 -

proposed settlement, your right to object to the proposed settlement and your right to participate in the final hearing on the proposed settlement, which will be held on _____, 2017.

Nothing in this Notice should be taken as an expression by the Court of any opinion as to what should be the ultimate outcome of the lawsuit in the event the proposed settlement is not approved, and nothing in this Notice should be taken to mean that there would necessarily be any recovery in the lawsuit in the event the proposed settlement is not approved.

## II.    *Background And Description Of The Lawsuit*.

On June 2, 2016, NRF, Colony Capital, Inc. ("Colony Capital"), NorthStar Asset Management Group, Inc. ("NSAM"), and certain other parties, entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which (among other things) NSAM, Colony Capital, and NRF, agreed to combine in an all-stock merger of equals (the "Colony NorthStar Transaction," or "Transaction") that would result in the creation of a combined company, Colony NorthStar, Inc. ("Colony NorthStar"). As part of the Colony NorthStar Transaction, the class A and class B common stockholders of Colony Capital received 1.4663 shares of Colony NorthStar class A or class B common stock, respectively. Common stockholders of NRF received 1.0996 shares of Colony NorthStar class A common stock for each share of NRF common stock they owned. Common stockholders of NSAM received 1.000 shares of Colony NorthStar class A common stock for each share of NSAM common stock they owned. Holders of each series of preferred stock of Colony Capital or NRF received one share of a series of preferred stock of Colony NorthStar with substantially the same terms for each share of Colony Capital or NRF preferred stock they own.

On July 28, 2016, Colony NorthStar, a Maryland subsidiary of NSAM, filed a registration statement on Form S-4 with the Securities and Exchange Commission ("SEC") that included a joint proxy statement/prospectus of NSAM, Colony Capital, and NRF which, among other things, (i) summarized the Merger Agreement, (ii) provided an account of the events leading up to the execution of the Merger Agreement, (iii) stated that the NSAM, Colony Capital, and NRF boards of directors each determined that the Colony NorthStar Transaction was in the best interests of their respective stockholders and recommended the Colony NorthStar Transaction for approval by their respective stockholders, and (iv) summarized the valuation analyses and fairness opinions by Bank of America Merrill Lynch ("Bank of America"), the financial advisor to Colony Capital's board of directors, Goldman, Sachs & Co., ("Goldman"), the financial advisor to NSAM's board of directors, Evercore Group L.L.C. ("Evercore"), the financial advisor to NSAM's special committee of independent directors, and UBS Securities LLC ("UBS"), the financial advisor to NRF's special committee of independent directors, which preliminary joint proxy statement/prospectus was amended and supplemented on September 15, 2016, October 17, 2016, and November 14, 2016 (as so amended and supplemented, the "Proxy Statements").

On September 29, 2016, William Carter (the "Colony Capital Plaintiff") filed a putative class action in the United States District Court for the District of Maryland, *William Carter v. Colony Capital, Inc., et al., Case No. 16-cv-03282* (the "Colony Action"), on behalf of himself and the other public shareholders of Colony Capital, alleging, among other things, that Colony Capital, Thomas J. Barrack, Jr., Richard B. Saltzman, Nancy A. Curtin, George G.C. Parker, John A. Somers, and John L. Steffens, (collectively, the "Individual Colony Capital Defendants" and

together with Colony Capital, the "Colony Capital Defendants") violated Section 14(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder by soliciting stockholder votes with the Proxy Statements that the Colony Plaintiff alleged were false and/or misleading, and that the Individual Colony Capital Defendants were liable under Section 20(a) of the Exchange Act, and sought, among other things, an order enjoining the Colony NorthStar Transaction unless or until the alleged material deficiencies in the Proxy Statements were corrected.

On November 18, 2016, Cindy Kessler (the "NSAM Plaintiff") filed a putative class action in the United States District Court for the District of Maryland, *Cindy Kessler v. NorthStar Asset Management Group, Inc., et al.*, Case No. 16-cv-03745 on behalf of herself and the other public shareholders of NSAM, alleging that NSAM, David T. Hamamoto, Judith A. Hannaway, Albert Tylis, Stephen Cummings, Oscar Junquera, Justin Metz, Wesley Minami, and Louis J. Paglia (the "Individual NSAM Defendants," and together with NSAM, the "NSAM Defendants"), violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by soliciting NSAM stockholder votes with the Proxy Statements that the NSAM Plaintiff alleged were false and/or misleading, and that the Individual NSAM Defendants were liable under Section 20(a) of the Exchange Act, and sought, among other things, an order enjoining the Colony NorthStar Transaction unless or until the alleged material deficiencies in the Proxy Statements were corrected.

On November 18, 2016, Jack Boothe (the "NRF Plaintiff"), filed a putative class action entitled *Jack Boothe v. NorthStar Realty Finance Corp.*, et al., Case No. 16-cv-03742 (the "NRF Action," and together with the NSAM Action and the Colony Capital Action, the "Actions"), on behalf of himself and the other public shareholders of NRF, against NRF, David T. Hamamoto, Judith A. Hannaway, Wesley D. Minami, Louis J. Paglia, Gregory Rush, and Charles W. Schoenherr (the "Individual NRF Defendants," and together with NRF, the "NRF Defendants"), alleging that the NRF Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by soliciting stockholder votes with the Proxy Statements that the NRF Plaintiff alleged were false and/or misleading, and that the Individual NRF Defendants were liable under Section 20(a) of the Exchange Act, and sought, among other things, an order enjoining the Colony NorthStar Transaction unless or until the alleged material deficiencies in the Proxy Statements were corrected.

On November 15, 2016, counsel for the Colony Capital Plaintiff proffered a written demand to counsel for Defendants seeking the dissemination of certain additional information regarding the Colony NorthStar Transaction, which demand thereafter was joined by the NSAM Plaintiff and the NRF Plaintiff (together with the Colony Capital Plaintiff, the "Plaintiffs") and subsequently, counsel to Plaintiffs and counsel to the Defendants engaged in negotiations concerning the terms to settle the Actions.

On November 29, 2016, the Colony Capital Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion"), which asked the Court to enjoin the Colony NorthStar Transaction unless or until the alleged material deficiencies in the Proxy Statements were corrected.

The Court scheduled a hearing on the Motion for December 1, 2016 at 4:00 p.m. (the "December 1 Hearing").

Thereafter the parties engaged in extensive, arm's-length negotiations regarding potential terms to settle the Actions. On December 9, 2016, counsel to the parties in the Actions reached an agreement on the supplemental disclosures (the "Supplemental Disclosures") that counsel for the Colony Capital Plaintiff demanded and was joined in the request by NSAM Plaintiff's counsel and NRF Plaintiff's counsel. NRF agreed to disseminate the Supplemental Disclosures to NRF shareholders on December 9, 2016. The Supplemental Disclosures formed the basis for a tentative settlement of the Actions, as reflected in a Memorandum of Understanding dated December 9, 2016 ("MOU"). Defendants acknowledge that the Supplemental Disclosures were filed with the SEC and issued to shareholders as a direct result of the prosecution of class claims in the Actions.

On December 9, 2016, NRF disseminated the Supplemental Disclosures to NRF shareholders pursuant to the MOU, a copy of which is attached hereto as Exhibit A.

On December 20, 2016, at a special meeting of the shareholders of NRF, the holders of the majority of the outstanding shares of NRF voted to approve the Colony NorthStar Transaction.

On January 10, 2017, NRF filed Articles of Merger with the Department of Assessments and Taxation of the State of Maryland, pursuant to which NRF was merged into Colony NorthStar, a Maryland corporation.

Pursuant to the terms of the MOU, counsel for Plaintiffs have conducted an investigation to confirm the potential settlement terms are fair and reasonable to stockholders, that included, among other things, a review of publicly available documents related to the Transaction, non-public documents produced to Plaintiffs by Defendants, and the depositions of Colony Capital Director John Somers, Cavan Yang, a representative of Bank of America, NRF Director and special committee member Charles Schoenherr, Alan Felder, a representative of UBS, NSAM Director and special committee member Justin Metz, and Keith Wetzel, a representative of Goldman.

The Defendants vigorously deny all fault or liability alleged in the NRF Action or otherwise in relation to the Merger, the Merger Agreement, the Preliminary Proxy Statement or the Definitive Proxy Statement, or with respect to any of the Released Claims (as defined below), and the Defendants specifically deny that any supplemental disclosures to NRF shareholders were or are required under any applicable rule, statute, regulation, or law. However, to avoid the substantial burden, expense, risk, inconvenience, and distraction of continued litigation, including the risk of delaying or adversely affecting the Merger, the Defendants considered and consider it desirable to fully and finally resolve the claims made against them.

Plaintiff and Co-Lead Counsel represent they brought the claims in good faith and continue to believe the claims asserted in the NRF Action have merit. However, they have determined that a settlement of the NRF Action (the "Settlement") on the terms and with the benefits reflected in the Stipulation (as defined below) is fair, reasonable, adequate, and in the best interest of Plaintiff and the Settlement Class, thereby avoiding the uncertain outcome and inherent delays and risks of further litigation and trial. They further believe, based on the information available to them, that

the Definitive Proxy Statement, with the addition of the Supplemental Disclosures, was and is adequate so that NRF shareholders were able to make a meaningful decision regarding whether to vote for or against the Merger.

On June ___, 2017, the Court entered an Order Preliminarily Approving Settlement (the "Preliminary Approval Order"), which preliminarily found and determined, for purposes of the proposed Settlement only, that the NRF Action may proceed as a non-opt-out class action under Rules 23(a), 23(b)(1), and/or 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of the Settlement Class, which excludes Defendants, their subsidiaries or other affiliates, their assigns, members of the immediate family of any Defendant, officers of Defendant, and the legal representatives, heirs, successors or assigns of any such excluded person, and further found and determined that Plaintiff and the law firms of Co-Lead Counsel Brower Piven, P.C. and Monteverde & Associates PC (collectively "Class Counsel") will fairly and adequately represent the interest of the Settlement Class in enforcing their rights in the NRF Action. The Preliminary Approval Order further preliminarily approved the Settlement as set forth in the Stipulation.

The Court has not made any decisions on the claims made in the NRF Action. The sending of this Notice is not an indication of how the Court may, or may not, view the parties' respective allegations, claims, and defenses. The Settlement is being proposed in order to resolve, by agreement, claims that are disputed and undecided.

## III.    *<u>The Proposed Settlement</u>*.

After investigation, review, and analysis of the facts and law relating to the matters at issue in this lawsuit, Plaintiff and Class Counsel have negotiated the Settlement with the Defendants on behalf of the Settlement Class, now memorialized in a Stipulation of Settlement executed by Class Counsel and Defendants' respective counsel as of June 30, 2017 (the "Stipulation"), and preliminarily approved by the Court by the Preliminary Approval Order dated June __, 2017. The Court must give formal, final approval to the Settlement before it can become effective.

What follows is a summary of the terms of the Settlement that are fully described in the Stipulation. The summary is not all-inclusive; further information may be had by referring to the Stipulation and other papers in the NRF Action that are filed with the Court, all of which may be inspected during regular business hours at the Clerk of Court, U.S. District Court for the District of Maryland, Northern Division, 101 West Lombard Street, Baltimore, MD 21201. Questions regarding the Settlement also may be directed in writing to Class Counsel at the address listed below. Please do not call the Court or the Clerk of Court with questions about the Settlement.

The principal terms of the Settlement are as follows:

## A.    <u>Consideration To Class Members</u>.

Pursuant to the negotiations conducted by Class Counsel and counsel for Defendants, the Company agreed to and did disclose additional information in the form of a Current Report on Form 8-K relating to the Merger, filed with the SEC on December 9, 2016. As a result, Class Members obtained additional disclosure in advance of the shareholder meeting to vote on the proposed Merger, as set forth in the Form 8-K.

**B.**     **Dismissal With Prejudice Of Claims Against Defendants; Release By Plaintiff And Class Members Of Claims Against Defendants And Released Parties.**

If the Settlement is given final approval by the Court, all claims in the NRF Action will be dismissed with prejudice against all Defendants, and the Plaintiff and all Class Members deemed to have forever released, relieved, settled, and discharged, fully and completely, among other things, claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature, or description whatsoever, whether direct, derivative, individual, class, representative, legal, equitable, or of any other type (known or unknown), whether based on state, local, foreign, federal, statutory, regulatory, common, or other law or rule, that Plaintiff or any or all members of the Class, in his, her, or their capacity as a NRF shareholder ("Releasing Parties") ever had, now have, or may have, or otherwise could, can, or might assert, against the Defendants, the Colony Capital Defendants, the NRF Defendants, Colony NorthStar, Bank of America, Evercore, Goldman, UBS or any of their respective families, parent entities, controlling persons, associates, predecessors, successors, affiliates, or subsidiaries, and each and all of their respective past or present officers, directors, executives, stockholders, principals, representatives, employees, attorneys, financial or investment advisors, consultants, accountants, auditors, investment bankers, commercial bankers, entities providing fairness opinions, underwriters, brokers, dealers, insurers, advisors or agents, heirs, executors, trustees, general or limited partners or partnerships, limited liability companies, members, managers, joint ventures, personal or legal representatives, estates, administrators, predecessors, successors, and assigns, and each of their respective affiliates, controlling persons, directors, officers, employees and agents, (the "Released Parties") that relate to or challenge: (i) the Colony NorthStar Transaction, (ii) any actions, deliberations or negotiations in connection with the Colony NorthStar Transaction or any agreements, disclosures, or events related thereto, (iii) the consideration received by the Class members or any Released Parties in connection with the Colony NorthStar Transaction, (iv) the fiduciary or other obligations of the Released Parties in connection with the Colony NorthStar Transaction, (v) the fees, expenses or costs incurred in prosecuting, defending or settling the NRF Action, the Colony Capital Action, or the NRF Action, (vi) any of the allegations in any complaint or amendment(s) thereto filed in the NRF Action, the Colony Capital Action, or the NRF Action, (vii) the NRF Action, the Colony Capital Action, or the NRF Action, (viii) the Merger Agreement or any preliminary or definitive joint proxy statement or other disclosures filed or distributed to unitholders or stockholders in connection with the Colony NorthStar Transaction (including without limitation the Proxy Statements and the Supplemental Disclosures, and any other materials related to the Colony NorthStar Transaction that has been or will be filed with the SEC), including without limitation any disclosures, non-disclosures or public statements made in connection with any of the foregoing, and (ix) any and all conduct by any of the Defendants or any of the other Released Parties arising out of or relating in any way to the negotiation or execution of this Settlement, the MOU, or the Related MOUs; *provided, however*, that the Released Claims shall not include claims by the parties to enforce the terms of this Stipulation, the Settlement, or the MOU.

The Settlement is intended to extinguish all of the Released Claims and, consistent with such intention, the Releasing Parties shall waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits of any state, federal or foreign law or principle of

common law, which may have the effect of limiting the release set forth above. This shall include a waiver by the Releasing Parties of any rights pursuant to Section 1542 of the California Civil Code (or any similar, comparable, or equivalent provision of any federal, state, or foreign law, or principle of common law), which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Plaintiff acknowledges, and the members of the Class shall be deemed by operation of the entry of a final order and judgment approving the Settlement to have acknowledged, that the foregoing waiver was separately bargained for, is an integral element of the Settlement, and was relied upon by each and all of the Defendants in entering into the Settlement.

In entering into the Settlement, Plaintiff assumes the risk of any mistake of fact or law if Plaintiff should later discover that any fact he relied upon in entering into the Settlement is not true, or that their understanding of the facts or law was incorrect. In such event, Plaintiff shall not be entitled to seek rescission of this Settlement, or otherwise attack the validity of the Settlement, based on any such mistake. The Settlement is intended to be final and binding upon Plaintiff regardless of any mistake of fact or law.

From the date of the Preliminary Approval Order until the Court determines whether a final judgment should be entered, Plaintiff and all other Class Members, and any of them, and anyone acting on their behalf, are barred and enjoined from commencing, prosecuting, instigating or in any way participating in the commencement or prosecution of any action asserting any Released Claims, either directly, representatively, derivatively, or in any other capacity, against any Released Party.

The release does not affect, create, enhance, diminish, or release any rights that any Company shareholder, including but not limited to the representative plaintiff, may otherwise have regarding statutory appraisal of his or her NRF common shares, or to enforce in the Court the terms of the Stipulation.

**C.    Payment Of Attorneys' Fees And Reimbursement Of Expenses To Class Counsel.**

Class Counsel reserves the right to seek an award of attorneys' fees and expenses. Defendants reserve the right to oppose the amount of any such request, but acknowledge that Class Counsel is entitled to seek an award of attorneys' fees and expenses in connection with the Settlement, subject to the Court's approval. Class Counsel agrees not to seek an award of fees in any other court in connection with the NRF Action and the Settlement. In the event the parties are unable to reach an agreement on attorneys' fees and expenses prior to the execution of a Stipulation, the parties agree to submit this Stipulation for final approval, notwithstanding approval of Class Counsel's application for attorneys' fees and expenses. In any event, any fees and expenses awarded by the Court in connection with the Settlement shall be payable within ten

(10) calendar days of the entry of the Order and Final Judgment or, if addressed separately by the Court entry of an order awarding such fees, but in any event such fee and expense award shall be subject to the refund provisions in Section 10(c) below, *provided, however*, that no fees or expenses shall be paid to Class Counsel in the absence of approval by the Court of the Settlement and a complete release of all the Released Persons in the form customarily approved in connection with the Settlement. Class Counsel shall be jointly and severally responsible for the repayment of any such fees as may be reduced or rescinded upon a successful appeal or collateral attack. Class Counsel warrants that no portion of any such fees, costs and expenses shall be paid to Plaintiff or to any member of the Settlement Class, except as approved by the Court.

Final resolution by the Court of the amount of fees and expenses to be paid to Class Counsel shall not be a condition to the Settlement or entry of the Order and Final Judgment. Any failure by the Court to approve any amount of fees or any request for attorneys' fees, costs and expenses in whole or in part shall not affect the validity or effectiveness of the Settlement.

NRF and/or its insurers, on behalf of itself and for the benefit of the other Defendants, shall pay or cause to be paid the Court-ordered amount of fees, costs and expenses in the manner directed by the Court to Class Counsel within ten (10) calendar days of entry of an order by the Court awarding Class Counsel such fees, costs or expenses, *provided* that Class Counsel has delivered to Defendants' counsel in timely fashion a W-9 for Class Counsel and instructions for delivery by mail and wire transfer; *further provided, however*, that Class Counsel shall have a joint and several obligation to refund to NRF and/or its insurers, as the case may be, within ten (10) calendar days, all amounts received, if and when, as a result of any appeal and/or further proceeding on remand, or successful collateral attack, the fee or expense award is reduced or reversed, the Settlement is voided by any party as provided in this Stipulation, or the Settlement is reversed or vacated by any court. Class Counsel shall determine the allocation and distribution among Class Counsel of any attorneys' fees, costs or expenses approved by the Court. The Released Parties shall have no responsibility for, and no liability with respect to, the fee and/or expense allocation among any of the Class Counsel and/or any other person who may assert any claim thereto.

Unless otherwise ordered by the Court, Class Counsel will file their application for attorneys' fees and reimbursement of expenses on or before _____, 2017, thirty-five (35) calendar days prior to the date of the Final Settlement Hearing (as defined below). All papers will be available for review at the office of the Clerk of Court, at the address set forth above. The Settlement described in this Notice is in no way conditioned on the award of attorneys' fees or reimbursement of expenses. Approval or disapproval in whole or in part of Class Counsel's application for payment of fees and expenses will not affect the finality or binding nature of the Settlement or releases described in this Notice.

## IV.    *The Final Settlement Hearing And Class Members' Right To Be Heard*

On _____, 2017, beginning at ___ .m., before The Honorable J. Frederick Motz, in the U.S. District Court for the District of Maryland, Northern Division, at the United States Courthouse, 101 West Lombard Street, Baltimore, MD 21201, Room ___, the Court will hold a hearing (the "Final Settlement Hearing") to consider and determine: (a) whether the

Settlement Class should be finally certified; (b) whether the Settlement should be finally approved as fair, reasonable, adequate, and in the best interests of the Settlement Class; (c) whether a final judgment should be entered dismissing the claims of Plaintiff and Class Members with prejudice, as required by the Stipulation, and releasing claims as required by the Stipulation; (d) in what amount to award attorneys' fees and reimbursement of expenses to Class Counsel; and (e) any objections to the Settlement and/or the request for payment of attorneys' fees and expenses. The Final Settlement Hearing may be continued or adjourned by the Court without further notice to Class Members other than announcement at the Final Settlement Hearing or at any adjournment thereof. The Court has also reserved the right to approve the Settlement at or after the Final Settlement Hearing with such modifications as may be consented to by Plaintiff and Defendants and without further notice to the Settlement Class.

If you are a Class Member, you will be bound by any judgment entered in the NRF Action. You may not opt out of the Settlement Class.

Class Counsel will represent the interests of the members of the Settlement Class at the Final Settlement Hearing. Class Members may also: (a) personally be heard at the hearing; (b) at their own expense, have an attorney other than Class Counsel appear at the hearing; and/or (c) submit written materials for the Court's consideration in connection with its review of the proposed settlement and the request of Class Counsel for an award of attorneys' fees and reimbursement of expenses. Class Members may make any comments or objections to the Settlement and/or the request of Class Counsel for an award of attorneys' fees and reimbursement of expenses that they wish. However, **Class Members and/or their attorneys will be heard at the Final Settlement Hearing, and written materials submitted for the Court's consideration will be considered, <u>only if</u> written notice of an intent to appear at the Final Settlement Hearing, a statement of the position to be asserted at the Final Settlement Hearing, and copies of any written materials to be submitted for the Court's consideration, are filed with the Clerk of Court and served upon Class Counsel and Defendants' counsel, by no later than _____, 2017**. All documents filed with the Court must include the caption and case number set forth at the beginning of this Notice.

Notices of intent to appear and any written materials for the Court's consideration shall be deemed filed on the date they are received by the Clerk of Courts via hand delivery or via first class, postage prepaid, at:

> Clerk of Court
> U.S. District Court for the District of Maryland, Northern Division
> 101 West Lombard Street
> Baltimore, MD 21201

And shall be deemed served on Class Counsel and Defendants' counsel on the date they are hand delivered or mailed, first class, postage prepaid, to:

> Charles J. Piven (Md. Fed. Bar No. 00967)
> Yelena Trepetin (Md. Fed. Bar No. 28706)
> BROWER PIVEN, P.C.
> 1925 Old Valley Road Stevenson, MD 21153

Tel: (410) 332-0030
Fax: (410) 685-1300
piven@browerpiven.com
trepetin@browerpiven.com

Nadeem Faruqi
James M. Wilson, Jr. (*pro hac vice forthcoming*)
FARUQI & FARUQI, LLP
685 Third Avenue, 26th Floor
New York, NY 10017
Tel: 212-983-9330
Fax: 212-983-9331

*Attorneys for Plaintiff Jack Boothe*

and

Andrew Gendron (Md. Bar No. 05111)
VENABLE LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
Tel: 410-244-7439
Fax: 410-244-7742
agendron@venable.com

Michael Holmes
VINSON & ELKINS LLP
Trammell Crow Center
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel: 214-220-7814
Fax: 214-999-7814

*Attorneys for Defendants NorthStar Realty Finance Corp.,
David T. Hamamoto, Judith A. Hannaway, Wesley D. Minami,
Louis J. Paglia, Gregory Rush, and Charles W. Schoenherr*

**If you are satisfied with the proposed Settlement and do not wish to be heard with respect to its terms or with respect to the request of Class Counsel for an award of attorneys' fees and reimbursement of expenses, you need not appear at the Final Settlement Hearing or take any other action.**

**V.     _Interim Injunction_.**

      Pending final determination of whether the Settlement should be approved, Plaintiff and all Class Members are barred and enjoined from commencing, prosecuting, instigating or in any way participating in the commencement, prosecution or instigation of any action asserting any

- 10 -

Released Claims, either directly, representatively, derivatively, or in any other capacity, against any Released Party.

## VI.    *What Happens If The Proposed Settlement Is Not Approved By The Court?*

Should the Stipulation not be executed or not be consummated in accordance with the terms described herein, the Settlement shall be null and void and of no force and effect, and shall not be deemed to prejudice in any way the position of any party with respect to the NRF Action. In such event, and consistent with the applicable evidentiary rules, neither the existence of the Stipulation and the MOU nor their contents shall be admissible in evidence or shall be referred to for any purpose in the NRF Action or in any other proceeding.  Further, in such event, (1) the parties shall be restored to their respective positions as they initially existed, and the Stipulation and all negotiations, transactions, and proceedings in connection herewith shall not be deemed to prejudice in any way their respective positions, and (2) the conditional certification of the Settlement Class as provided for herein shall be vacated and of no further force and effect with respect to Defendants, and Defendants shall not be precluded from challenging whether the NRF Action may proceed as a class action.

## VII.    *Notice To Nominees*.

If you held any Company stock as a nominee for the beneficial owner, in "street name," or in your name as trustee or fiduciary, please within ten (10) calendar days of receipt of this Notice either (1) advise the notice administrator in writing so that an appropriate quantity of this Notice can be sent to you for distribution to all beneficial owners for whom you held such stock, or (2) provide the names and addresses of such beneficial owners, preferably in electronic format (e.g., Excel, CSV, etc.), setting forth (a) title/registration, (b) street address, and (c) city/state/zip, to the notice administrator at the following address:

NorthStar Realty Finance Corp. Shareholder Litigation Notice Administrator
[Address]

Each nominee may, if it does so promptly, apply to the notice administrator for reimbursement of actual out-of-pocket costs reasonably incurred in forwarding the Notice to beneficial owners, or in identifying the beneficial owners to the notice administrator so that the Notice may be mailed.

By the Court, this _____ day of _____, 2017.

  Clerk of Court
  United States District Court
  District of Maryland, Northern Division

**PLEASE DO <u>NOT</u> CONTACT THE COURT OR CLERK OF COURT WITH ANY QUESTIONS REGARDING THIS NOTICE.**

# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬

| | | |
|---|---|---|
| JACK BOOTHE, Individually and on Behalf of All Others Similarly Situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NORTHSTAR REALTY FINANCE CORP., et. al. | : | Case No. 16-cv-03742-JFM |
| | : | |
| Defendants. | : | |
| | : | |

▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬ ▬

## <u>ORDER AND FINAL JUDGMENT</u>

Pursuant to the Court's Order of _____, 2017 (the "Preliminary Approval Order"), this Court (the "Court") held a hearing on _____, 2017 (the "Final Settlement Hearing"), on the Stipulation of Settlement (the "Stipulation"), which was filed on _____, 2017, in the above-captioned action (the "NRF Action"). The Preliminary Approval Order and the Stipulation were joined and consented to by all the parties to the NRF Action and are incorporated by reference in this Order and Final Judgment. Due notice of the Final Settlement Hearing was given to the Settlement Class, as defined in paragraph 4 below, in accordance with the Preliminary Approval Order, and the Notice was adequate and sufficient. The parties to the NRF Action appeared at the Final Settlement Hearing by their respective attorneys of record and were heard in support of the Settlement of the NRF Action. All other persons desiring to be heard who properly and timely filed and served objections and/or notices of intent to appear were given an opportunity to be heard as provided in the Notice. The entire matter of the Settlement having been considered by the Court,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, this ___ day of _____, 2017, as follows:

1. Unless otherwise defined in this Order and Final Judgment, all capitalized terms shall have the meanings set forth in the Stipulation.

2. The Notice of Proposed Settlement of Class and Derivative Action and Hearing thereon (the "Notice") has been given to the Settlement Class pursuant to and in the manner directed by the Preliminary Approval Order.  Proof of the mailing of the Notice was filed with the Court, and a full opportunity to be heard has been afforded to all parties to the NRF Action, the Settlement Class, and other persons interested in the Settlement.  The Court hereby determines that the Notice previously given to Class Members constituted the best notice practicable under the circumstances, constituted due and sufficient notice of the NRF Action, the Settlement, and the matters set forth in said Notice to all persons entitled to receive notice, and fully satisfied the requirements of due process and Federal Rules of Civil Procedure 23 and 23.1. The Court further determines that all members of the Settlement Class are bound by this Order and Final Judgment.  Defendants further caused to be served on the United States Attorney General and all State Attorneys General notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711 *et seq*. ("CAFA" ), and the form and manner of that notice is hereby determined to be in full compliance with CAFA.

3. Based on the record in the NRF Action, the Court finds that each of the provisions of Federal Rule of Civil Procedure 23 has been satisfied, and that the NRF Action has been properly maintained according to the provisions of Federal Rules of Civil Procedure 23(a), 23(b)(1), and/or 23(b)(2).  Specifically, the Court finds that (a) the Settlement Class is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact

common to the Settlement Class; (c) the claims of Plaintiff as representative plaintiff are typical

of the claims of the Settlement Class; (d) Plaintiff and Class Counsel have fairly and adequately

protected and represented the interests of the Settlement Class; (e) prosecuting separate actions

by individual Class Members would create a risk of inconsistent or varying adjudications that

would establish inconsistent standards of conduct for the Defendants; and (f) Defendants have

acted on grounds that generally apply to the Settlement Class.

4.     The NRF Action is hereby finally certified as a non-opt-out class action, pursuant

to Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2), on behalf of a class consisting

of all record and beneficial holders of NRF common stock, their respective successors in interest,

successors, predecessors in interest, predecessors, representatives, trustees, executors,

administrators, heirs, assigns, or transferees, immediate and remote, and any person or entity

acting for or on behalf of, or claiming under, any of them, and each of them, together with their

predecessors and successors and assigns, who held NRF common stock at any time between and

including May 6, 2016 and January 17, 2017 (the "Class Period"), but excluding Defendants,

their subsidiaries or other affiliates, their assigns, members of their immediate families, officers

of NRF, and the legal representatives, heirs, successors, or assigns of any such excluded person

(the "Settlement Class").  Further, the Plaintiff and the law firms of Co-Lead Counsel Brower

Piven, P.C. and Faruqi & Faruqi, LLP have fairly and adequately represented the interests of the

Settlement Class in enforcing their rights in the NRF Action, and are finally certified as

Settlement Class representatives and Class Counsel, respectively.

5.     The Settlement is found to be fair, reasonable, adequate, and in the best interests

of the Settlement Class and NRF in its capacity as nominal defendant, and is hereby approved

pursuant to Federal Rules of Civil Procedure 23(e) and 23.1.  The parties to the Stipulation are

hereby authorized and directed to comply with and to consummate the Settlement in accordance with its terms and provisions, and the Clerk is directed to enter and docket this Order and Final Judgment in the NRF Action.

6.      The Court has jurisdiction over the subject matter of the NRF Action, including all matters necessary to effectuate the Settlement and this Order and Final Judgment, and jurisdiction over all parties to the NRF Action.

7.      The NRF Action and the claims asserted therein are hereby dismissed with prejudice as to all Defendants in the NRF Action and against all members of the Settlement Class and, except as otherwise provided in the Stipulation and in paragraph 13 below, without the award of any damages, costs or fees, or the grant of any further relief.

8.      All claims in the NRF Action are dismissed with prejudice against all Defendants, and the Plaintiff and all Class Members will be deemed to have forever released, relieved, settled, and discharged, fully and completely, among other things, claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature, or description whatsoever, whether direct, derivative, individual, class, representative, legal, equitable, or of any other type (known or unknown), whether based on state, local, foreign, federal, statutory, regulatory, common, or other law or rule, that Plaintiff or any or all members of the Class, in his, her, or their capacity as a NRF shareholder ("Releasing Parties") ever had, now have, or may have, or otherwise could, can, or might assert, against the Defendants, David T. Hamamoto, Judith A. Hannaway, Wesley D. Minami, Louis J. Paglia, Gregory Rush, and Charles W. Schoenherr, the Colony Capital Defendants, the NRF Defendants, Colony NorthStar, Bank of

America, Evercore, Goldman, UBS or any of their respective families, parent entities, controlling persons, associates, predecessors, successors, affiliates, or subsidiaries, and each and all of their respective past or present officers, directors, executives, stockholders, principals, representatives, employees, attorneys, financial or investment advisors, consultants, accountants, auditors, investment bankers, commercial bankers, entities providing fairness opinions, underwriters, brokers, dealers, insurers, advisors or agents, heirs, executors, trustees, general or limited partners or partnerships, limited liability companies, members, managers, joint ventures, personal or legal representatives, estates, administrators, predecessors, successors, and assigns, and each of their respective affiliates, controlling persons, directors, officers, employees and agents, (the "Released Parties") that relate to or challenge: (i) the Colony NorthStar Transaction, (ii) any actions, deliberations or negotiations in connection with the Colony NorthStar Transaction or any agreements, disclosures, or events related thereto, (iii) the consideration received by the Class members or any Released Parties in connection with the Colony NorthStar Transaction, (iv) the fiduciary or other obligations of the Released Parties in connection with the Colony NorthStar Transaction, (v) the fees, expenses or costs incurred in prosecuting, defending or settling the NRF Action, the Colony Capital Action, or the NSAM Action, (vi) any of the allegations in any complaint or amendment(s) thereto filed in the NRF Action, the Colony Capital Action, or the NSAM Action, (vii) the NRF Action, the Colony Capital Action, or the NSAM Action, (viii) the Merger Agreement or any preliminary or definitive joint proxy statement or other disclosures filed or distributed to unitholders or stockholders in connection with the Colony NorthStar Transaction (including without limitation the Proxy Statements and the Supplemental Disclosures, and any other materials related to the Colony NorthStar Transaction that has been or will be filed with the SEC), including without limitation any

- 5 -

disclosures, non-disclosures or public statements made in connection with any of the foregoing, and (ix) any and all conduct by any of the Defendants or any of the other Released Parties arising out of or relating in any way to the negotiation or execution of this Settlement, the MOU, or the Related MOUs (the "Released Claims"); *provided, however*, that the Released Claims shall not include claims by the parties to enforce the terms of this Stipulation, the Settlement, or the MOU.

9.      Defendants, including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under any of them, and each of them, forever release Plaintiff, Plaintiff's counsel, and the members of the Class from any and all claims arising out of or relating to their filing and prosecution of the NRF Action and any Released Claims; *provided*, *however*, that this release shall not include the right of Defendants to enforce the terms of the Settlement.

10.     The Releasing Parties shall waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits of any state, federal or foreign law or principle of common law, which may have the effect of limiting the release set forth above.  This shall include a waiver by the Releasing Parties of any rights pursuant to Section 1542 of the California Civil Code (or any similar, comparable, or equivalent provision of any federal, state, or foreign law, or principle of common law), which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Plaintiff acknowledges, and the members of the Class shall be deemed by operation of the entry of a final order and judgment approving the Settlement to have acknowledged, that the foregoing

waiver was separately bargained for, is an integral element of the Settlement, and was relied

upon by each and all of the Defendants in entering into the Settlement.

11.     Plaintiff and all other Class Members, and any of them, and anyone acting on

their behalf, are barred and enjoined from commencing, prosecuting, instigating or in any way

participating in the commencement or prosecution of any action asserting any Released Claims,

either directly, representatively, derivatively, or in any other capacity, against any Released

Party.  The Settling Parties agree to use their best efforts to prevent, stay, or seek dismissal of, or

to oppose entry of any interim or final relief in favor of any member of the Settlement Class in,

any other litigation that would be barred by the releases contemplated by the Stipulation, and any

other litigation against any of the Settling Parties that challenges the Settlement, the Merger, or

any transactions contemplated thereby, or that otherwise involves, directly or indirectly, a

Released Claim.

12.     Neither the Stipulation, the Settlement, this Order and Final Judgment, nor any

negotiation had, act performed, or document executed pursuant to or in furtherance of the

Stipulation or the Settlement (a) is or may be deemed to be, or may be used or construed as, a

presumption, concession or admission of, or evidence of, the validity or lack of validity of any

Released Claims or any wrongdoing or liability of Defendants or a waiver of any applicable

statute of limitations; (b) is or may be deemed to be or may be used or construed as a

presumption, concession or admission of, or evidence of, any fault, liability or wrongdoing as to

any facts or claims that have been or might be alleged or asserted in the NRF Action, or any

other action or proceeding that has been, will be, or could be brought in relation to the Released

Claims, the Merger, the Merger Agreement, the Proxy Statement, or any other negotiation,

deliberation, or action taken or contemplated with regard to any proposal concerning the matters

herein, nor may they or any of them or any portion of them be interpreted, construed, deemed, invoked, offered, or received in evidence or otherwise used by any person in the NRF Action, or in any other action or proceeding, whether civil, criminal or administrative, for any purpose other than as provided expressly herein. Notwithstanding the foregoing, any of the Released Persons may file the Stipulation or any judgment or order of the Court related hereto, in any action to enforce the provisions of the Stipulation or in any action that may be brought against them, in order to support any and all defenses or counterclaims based on res judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion, or similar defense or counterclaim.

13. Class Counsel are hereby awarded attorneys' fees and expenses in the amount of $ _____, which sum the Court finds to be fair and reasonable and which shall be paid to Class Counsel in accordance with the terms of the Stipulation.

14. The effectiveness of this Order and Final Judgment and the obligations of Plaintiff, Class Counsel, the Settlement Class, and the Defendants under the Settlement shall not be conditioned upon or subject to the resolution of any appeal that relates solely to the issue of the application for an award of attorneys' fees and expenses.

15. The Court further orders, adjudges, and decrees that all other relief be, and is hereby, denied, and that this Order and Final Judgment disposes of all the claims as to all the parties in the NRF Action.

16. The Court hereby retains and reserves jurisdiction over all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of the Stipulation and the Settlement.

17.     In the event that this judgment does not become "Final" in accordance with paragraph 5 of the Stipulation, then the judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation, and this Order and Final Judgment shall be vacated.  In such event, all orders entered in connection with the Settlement shall be null and void, and the Settlement Class shall be decertified.  In such event, the NRF Action shall return to its status prior to execution of the MOU.

SO ORDERED.

Dated: _____, 2017

_____
The Honorable J. Frederick Motz
United States District Judge